The STATE of Ohio, Appellee,

v.

MOSLEY, Appellant.

[Cite as *State v. Mosley,* 178 Ohio App.3d 631, 2008-Ohio-5483.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90706.

Decided Oct. 23, 2008.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Mary McGrath, Assistant Prosecuting Attorney, for appellee.

Michael P. Maloney, for appellant.

ANN DYKE, Judge.

{¶ 1} Defendant-appellant, Eric Mosley ("appellant"), appeals his convictions and sentences for kidnapping and domestic violence. For the reasons set forth below, we affirm.

{¶ 2} On September 7, 2007, the Cuyahoga County Grand Jury indicted appellant on three counts: count one alleged domestic violence in violation of R.C. 2919.25(A) with two "furthermore" clauses for two prior domestic-violence convictions; count two alleged disrupting public service in violation of R.C. 2909.04(A)(1); and count three alleged kidnapping in violation of R.C. 2905.01(A)(2) and/or (A)(3). Appellant pleaded not guilty to the charges in the indictment.

{¶ 3} The jury trial of this matter was held on November 11, 2007. At trial, L.M. testified that on July 15, 2007, a verbal argument between appellant and her escalated into a physical altercation. More specifically, while L.M. was ironing a shirt in her living room, appellant grabbed her by the shoulders, shook her, and put her up against a wall. Consequently, L.M. dropped the iron she was holding and then tripped over the object. Both L.M. and appellant then fell to the ground.

{¶ 4} While on the ground, appellant was on top of L.M. She struggled to get up but was unable. She testified that the two were yelling at each other and she pleaded with him to free her from his hold. He denied her requests, and instead, continued to hold her down. Within seconds, L.M.'s mother and son pulled appellant from L.M. As a result of the altercation, the hot iron hit L.M.'s leg and caused a burn. She also suffered from a scratch on her hand.

{¶ 5} The son of L.M. and appellant ("the son") testified that he witnessed the incident that occurred on July 15, 2007. He explained that L.M. and appellant were verbally arguing when appellant walked into the room where L.M. was located. The son then heard appellant smack L.M. The son next saw L.M. on the ground and appellant grabbing her. L.M. was slapping appellant's hands out of the way and kicking. She attempted to get up but appellant was keeping her down and grabbing her. L.M. was screaming and yelling at appellant to get off her but appellant was not responding. The son of L.M., therefore, attempted to grab appellant by the stomach and pull him off L.M. The son further testified that he saw the burn mark on his mother as a result of this incident.

{¶ 6} Officer Stephen Pagano, a police officer with the Maple Heights Police Department, testified that both L.M. and her mother informed him that appellant had assaulted L.M. Accordingly, he took a statement from L.M. Officer Pagano testified that L.M.'s statement differed from her testimony. In her statement,

L.M. submitted that appellant choked her but when she testified at trial she denied any choking.

{¶ 7} Following the officer's testimony, the state concluded its case and offered various exhibits into evidence, including two journal entries documenting appellant's two previous convictions for domestic violence. Appellant stipulated to the convictions, and the trial court admitted the exhibits into evidence.

{¶ 8} Thereafter, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court denied his motion. He then proceeded to rest his case and made another Crim.R. 29(A) motion. The trial court again denied appellant's request and presented the case to the jury for deliberation.

{¶ 9} The jury found appellant guilty of the domestic-violence and kidnapping charges as alleged in counts one and three of the indictment but found him not guilty of disrupting public service as charged in count two.

{¶ 10} On November 8, 2007, the trial court sentenced appellant to one year of imprisonment for the domestic-violence conviction and three years for the kidnapping conviction. The court ordered that the sentences run concurrent to each other, for a total three-year prison sentence. Additionally, the court sentenced appellant to a mandatory five years of postrelease control.

{¶ 11} Appellant now appeals and asserts two assignments of error for our review. His first assignment of error states:

{¶ 12} "The trial court erred in denying appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of kidnapping."

{¶ 13} Crim.R. 29(A) governs motions for judgments of acquittal and provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."

{¶ 14} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.

{¶ 15} In this assignment of error, appellant argues that the trial court erred in denying his motion for acquittal only as to the kidnapping charge because the state failed to present evidence establishing that appellant restrained L.M.'s liberty. Viewing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence of kidnapping. The statute defining kidnapping, R.C. 2905.01, states:

{¶ 16} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶ 17} "(2) To facilitate the commission of any felony or flight thereafter;

{¶ 18} "(3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶ 19} This court has previously defined the element of "restrain the liberty of the other person" to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Wingfield* (Mar. 7, 1996), Cuyahoga App. No. 69229, 1996 WL 100847; see also *State v. Walker* (Sept. 2, 1998), Medina App. No. 2750-M, 1998 WL 597881 (restraint of liberty does not require prolonged detainment); *State v. Messineo* (Jan. 6, 1993), Athens App. Nos. 1488 and 1493, 1993 WL 3520 (grabbing victim's arm and shaking her constituted restraint).

{¶ 20} "[Furthermore,] [a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he is.'" *State v. Wilson* (Nov. 2, 2000), Franklin App. No. 99AP-1259, 2000 WL 1639621, quoting 1974 Committee Comment to R.C. 2905.01.

{¶ 21} In *State v. Swearingen* (Aug. 20, 2001), Clinton App. No. CA2001-01-005, 2001 WL 950671, the court found sufficient evidence establishing the element of restraint for an abduction conviction where the defendant briefly detained the victim. Id. In that case, the defendant grabbed the victim by her shoulders and sat her on the ground. Id. After the two sat next to each other for a few moments, the defendant pushed the victim back and pinned her to the ground by her wrists for about ten to 20 seconds before releasing her. Id. In finding that the evidence sufficiently established that the victim was restrained, the court reasoned that "[t]he fact that the restraint was brief, fifteen to twenty seconds at most, is immaterial, as even a momentary restraint may constitute an abduction." Id.

{¶ 22} Likewise, in the instant matter, we find the detention of L.M. sufficient to constitute a kidnapping. L.M. testified that she was ironing a shirt when

appellant grabbed her shoulders and shook her. This jolting resulted in her dropping the hot iron and causing a burn to her leg. Additionally, the two fell to the ground. While on the ground, appellant got on top of L.M. and proceeded to grab and restrict her, thereby inhibiting her ability to get up. L.M. asked appellant to free her and even kicked and screamed to escape. Her pleas, however, were unanswered until her son and mother pulled appellant from L.M. Considering the foregoing, we find sufficient evidence establishing that appellant restrained the liberty of L.M. to facilitate the commission of domestic violence or to terrorize or inflict physical harm on L.M. Appellant's first assignment of error is overruled.

{¶ 23} Appellant's second assignment of error states:

{¶ 24} "The trial court erred by sentencing defendant on both the kidnapping and domestic violence charges where those charges were allied offenses of similar import."

{¶ 25} R.C. 2941.25 provides:

{¶ 26} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 27} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 28} In applying R.C. 2941.25, the Supreme Court of Ohio has long followed a two-tiered test in determining whether two offenses are allied offenses of similar import:

{¶ 29} "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.

{¶ 30} In *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, the Supreme Court explained that, in conducting the first part of the two-tiered test,

the courts should compare the statutory elements of the offenses in the abstract rather than consider the particular facts of the case. The court reasoned that "comparison of the statutory elements in the abstract is the more functional test, producing 'clear legal lines capable of application in particular cases.'" Id. at 636, 710 N.E.2d 699, quoting *Kumho Tire Co., Ltd. v. Carmichael* (1999), 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238.

{¶ 31} Earlier this year, the Supreme Court of Ohio in *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 21, noted that some appellate courts have incorrectly applied *Rance*'s "abstract elements comparison test" by conducting a "strict textual comparison" of the elements under R.C. 2941.25(A). The *Cabrales* court clarified:

{¶ 32} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import." Id. at paragraph one of the syllabus.

{¶ 33} Most recently, in *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, the Supreme Court of Ohio again revisited its decision in *Rance.* The court illuminated that the two-tiered test is merely a tool, not a requirement, used to determine the legislature's intentions regarding whether to permit cumulative sentencing. Id. at ¶ 37. "'By asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in enacting the two statutes.'" Id. at ¶ 35, quoting *Whalen v. United States* (1980), 445 U.S. 684, 713, 100 S.Ct. 1432, 63 L.Ed.2d 715 (Rehnquist, J., dissenting). If the legislature's intent is clear from the language of the statute, one need not resort to the two-tiered test. Id. at ¶ 37.

{¶ 34} In support of the aforementioned position, the *Brown* court performed its own analysis of whether two offenses of aggravated assault, each under a different part of the statute, constitute crimes of similar import. In performing its analysis, the court demonstrated that sometimes, even though applied accurately, the two-tiered test renders erroneous results.

{¶ 35} The court compared the elements of aggravated assault in violation of R.C. 2903.12(A)(1) with aggravated assault in violation of R.C. 2903.12(A)(2) pursuant to the first part of the two-tiered test for determining whether two offenses constitute allied offenses of similar import set forth in *Rance* and

clarified in *Cabrales*. Id., 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 34. The court determined that, in "comparing the elements of the offenses in the abstract, the commission of one will not necessarily result in commission of the other." Id. Thus, the court found that the two aggravated-assault offenses failed the first part of the test. Id. In the past, this would have rendered the two offenses crimes of dissimilar import, and the analysis would end there.

{¶ 36} The court, however, did not end its analysis there. Id. at ¶ 35. It demonstrated that, in that instance, the two-tiered test provided an erroneous result. Id. The court explained that the two-tiered test is employed to determine the legislative intent, and when it fails to do so, we must determine on our own, without the use of the test, whether the legislature intended for the two crimes to constitute crimes of similar import. Id.

{¶ 37} In determining the legislature's intention, the Supreme Court has previously compared the societal interests protected by the two statutes. Id. at ¶ 36. If the interests are similar, then the crimes are allied offenses of similar import and a court must then review the defendant's conduct to determine whether the crimes were committed separately or with a separate animus. Id. at ¶ 40–41. If, however, the societal interests differ, the crimes are not crimes of similar import, and the court's analysis ends there. Id. at ¶ 36.

{¶ 38} Here, R.C. 2919.25(A), the statute governing domestic violence, provides the following:

{¶ 39} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 40} Kidnapping is proscribed in R.C. 2905.01 as:

{¶ 41} "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶ 42} "(2) To facilitate the commission of any felony or flight thereafter;

{¶ 43} "(3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶ 44} In *State v. Amell*, Summit App. No. 23943, 2008-Ohio-3770, 2008 WL 2924705, the Ninth District compared the elements of kidnapping and domestic violence in the abstract and determined that the commission of one will not necessarily result in the commission of the other. In so concluding, the court reasoned:

{¶ 45} "It is possible to commit either kidnapping or domestic violence without committing the other. There are several notable differences between the two crimes, including the 'family or household member' element of domestic violence

that does not appear in kidnapping and, as noted by the Ohio Supreme Court in determining that kidnapping and felonious assault are not allied offenses of similar import, 'a person may seriously injure another without restraining the victim of his or her liberty.'" Id., quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 118, 526 N.E.2d 816.

{¶ 46} As did the court in *Amell,* supra, we find that kidnapping and domestic violence fail the first part of the two-tiered test. The commission of kidnapping does not necessarily result in the commission of domestic violence and vice versa.

{¶ 47} Pursuant to *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, however, our analysis does not cease there. We must next determine whether the legislature manifested an intention to permit separate punishments for commission of the two crimes. As did the court in *Brown,* in determining the legislature's intentions, we compare the societal interests protected by the relevant statutes.

{¶ 48} In the case sub judice, we find that the statutory provisions dealing with domestic violence and kidnapping are intended to protect different social interests. The domestic-violence statute seeks to prevent physical harm to family members. On the other hand, the kidnapping statute seeks to protect against the restraint of a person's liberty. See Legislative Service Commission Summary of Am.Sub.H.B. No. 511, The New Ohio Criminal Code (June 1973) 9; see, also, *United States v. Wolford* (1971), 144 U.S.App.D.C. 1, 8, 444 F.2d 876 (" 'the heart of the crime' of kidnapping is a seizure and detention against the will of the victim"); *State v. Brown* (1957), 181 Kan. 375, 387, 312 P.2d 832 (the object of state and federal kidnapping laws "is to secure the personal liberty of citizens and to secure them the assistance of the law necessary to release them from unlawful restraint"). In comparing the interests, it is clear that the societal interests protected by the domestic-violence and kidnapping statutes differ. Accordingly, pursuant to *Brown,* we conclude that the General Assembly intended to distinguish the offenses and allow separate punishments for the commission of the two crimes. Therefore, we find that the offenses of domestic violence and kidnapping are not allied offenses of similar import and overrule appellant's second assignment of error.

Judgment affirmed.

GALLAGHER, P.J., and KILBANE, J., concur.