[Cite as *State v. Hanson*, 2013-Ohio-3916.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No.   99362

---

# STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

# DERRICK M. HANSON

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565761

**BEFORE:**   Boyle, P.J., S. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   September 12, 2013

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Adam Chaloupka
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Derrick Hanson, appeals his conviction and sentence.

He raises four assignments of error for our review:

1.    The trial court did not comply with Crim.R. 11 and defendant's plea was not knowingly, intelligently, and voluntarily made.

2.    The defendant was denied his right to counsel.

3.    Defendant was denied effective [assistance] of counsel.

4.    The defendant was denied a fair sentencing hearing resulting in a violation of his due process rights.

{¶2} Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶3} On August 15, 2012, Hanson was indicted on five counts: one count of aggravated burglary in violation of R.C. 2911.11(A)(1); one count of kidnapping in violation of R.C. 2905.01(A)(3); one count of felonious assault, in violation of R.C. 2903.11(A)(1); one count of domestic violence in violation of R.C. 2919.25(A); and one count of failure to comply with order, signal of police officer in violation of R.C. 2921.331(B).  He pleaded not guilty to all charges.

{¶4} In October 2012, Hanson withdrew his former not guilty plea and pleaded guilty to four of the five counts, including aggravated burglary, felonious assault, domestic violence, and failure to comply.  The kidnapping count was dismissed.

**{¶5}** After the trial court accepted Hanson's guilty plea, it immediately proceeded to sentencing. The trial court sentenced Hanson to a total of ten years in prison; seven years each for aggravated burglary and felonious assault, and six months for domestic violence, all to be served concurrently to one another; and three years for failure to comply, to be served consecutive to the seven-year term for the other counts. The trial court further advised Hanson that he would be subject to a mandatory term of five years of postrelease control upon his release from prison. It is from this judgment that Hanson appeals.

## Crim.R. 11

**{¶6}** In his first assignment of error, Hanson argues that the trial court did not comply with Crim.R. 11.

**{¶7}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).

**{¶8}** To ensure that a plea to a felony charge is knowingly, intelligently, and voluntarily entered into, a trial court must follow the dictates of Crim.R. 11(C)(2). This provision provides that the court must address defendants personally and (1) determine that they understand the nature of the charges against them and of the maximum penalty involved, (2) inform them of and determine that they understand the effect of a plea of

guilty or no contest and that the court may proceed with judgment and sentence, and (3) inform them of and determine that they understand the constitutional rights that they are giving up by entering into their plea. Crim.R. 11(C)(2)(a) – (c). The United States Supreme Court specified a defendant's constitutional rights as (1) the Fifth Amendment privilege against compulsory self-incrimination, (2) the right to trial by jury, and (3) the right to confront one's accusers. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

{¶9} Crim.R. 11(C)(2)(c) sets forth a defendant's constitutional rights as follows:

Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶10} In differentiating between constitutional rights and nonconstitutional rights under Crim.R. 11(C), courts have held that strict compliance with the rule is required if the appellant raises a constitutional right delineated in Crim.R. 11(C)(2)(c). *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. Substantial compliance, however, is the standard when the appellant raises a violation of a nonconstitutional right outlined in Crim.R. 11(C)(2)(a) and (b). *State v. Drake*, 8th Dist. Cuyahoga No. 98640, 2013-Ohio-1984, ¶ 5, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶11} This court conducts a de novo review to determine whether the trial court accepted a plea in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist.

Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *Stewart*, *supra*. "We are required to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C)." *State v. Schmick*, 8th Dist. Cuyahoga No. 95210, 2011-Ohio-2263, ¶ 6.

**{¶12}** Hanson only raises one issue with respect to the trial court's lack of compliance with Crim.R. 11. He contends that the trial court erred because it informed him that he could "have both local counsel and the public defender cross-examine witnesses." He claims that "this is simply not accurate," because "[o]nly one attorney is capable and/or permitted to cross-examine one witness." He maintains that "since this issue concerns the court's failure to accurately describe the constitutional rights being waived, a showing of prejudice is not required." After review of the record in this case, we find no merit to Hanson's sole issue regarding the trial court's Crim.R. 11 compliance.

**{¶13}** At the beginning of the plea hearing, the trial court stated that the defendant was present "with his attorney Mr. Cavallo." Frank Cavallo was the assigned public defender to represent Hanson. The trial court then stated:

> I'll note for the record that Mr. Hanson when we were on the record last week had an opportunity to discuss a possible change of plea. At a time, Mr. Bradley's, Stephen Bradley's name was mentioned about possibly being involved with the case. While Mr. Bradley has had conversations with I think Mr. Mahoney as it was indicated some months back, I think even with Detective Sergeant Porter sometime as well, and Mr. Cavallo, he had never made a notice of appearance, although he was on the record, I believe, last week discussing this case and about a possible resolve.

Mr. Bradley is also here and also at the defense table. Mr. Bradley is here for mitigation purposes, if I could at least say that, and he would like to say something on the record, as well. So he has been asked by the family to come. He's been very active in discussions about trying to resolve the case and discussions with Mr. Hanson, so I do want to place that on the record.

I think Mr. Cavallo has been provided all the discovery and evidence and would speak to that issue regarding the change of plea.

{¶14} The trial court then asked, "Mr. Bradley, is that a fair representation of your position here as counsel," which Attorney Bradley replied that it was.

{¶15} The prosecutor then outlined the terms of the plea deal, including the maximum penalty involved with each offense. After outlining the plea, the prosecutor stated, "[o]ther than that, your Honor, I have provided defense counsel, Mr. Cavallo, with full discovery. [And] I have had several discussions with Mr. Bradley in regards to mitigation of the case."

{¶16} Attorney Cavallo then agreed that the prosecutor properly outlined the plea deal as he understood it.

{¶17} In response to the trial court's questions, Hanson stated that he was not under the influence of any drugs or alcohol at the time of the plea; that he understood he was waiving his right to go to trial; that no one threatened him or forced him to enter into the plea deal; and that he was satisfied with "the representation of Mr. Cavallo and Mr. Bradley when he became involved with the mitigation in discussing this case with [him]."

{¶18} The trial court then proceeded to explain Hanson's constitutional rights to him. With respect to the only issue Hanson is raising, the trial court stated, "Each of

your lawyers, if Mr. Bradley were to come in as the lawyer on the trial or Mr. Cavallo, both of them being long-standing attorneys here in this court, both of them would have an opportunity to examine and cross-examine all of the state's witnesses."

{¶19} We disagree with Hanson that "[o]nly one attorney is capable and/or permitted to cross-examine one witness."   It is well within a trial court's discretion to permit different attorneys representing the same party to share responsibilities during a trial.   If Hanson is trying to say that the trial court meant that each of his attorneys could cross-examine each witness, we disagree that is what the trial court was saying.

{¶20} The important constitutional right that Hanson was waiving by entering into a plea agreement was that *he* had a right to confront his accusers.   By advising Hanson that his attorneys could cross-examine each one of the state's witnesses, the trial court properly conveyed that right to Hanson.   *See State v. Johnson*, 8th Dist. Cuyahoga No. 89464, 2008-Ohio-446 (trial court informing the defendant that he is giving up his right to cross-examine the state's witnesses was sufficient to satisfy the constitutional requirement that a trial court inform the defendant that he is waiving his right to confront his accusers).

{¶21} Thus, we conclude that the trial court followed the dictates of Crim.R. 11, including advising Hanson of, and ensuring that he understood, the important constitutional rights that he was waiving by entering into the plea.

{¶22}   Hanson's first assignment of error is overruled.

Right to Counsel and Effective Assistance of Counsel

**{¶23}** In Hanson's second assignments of error, he argues that the fact that the trial court permitted both attorneys to participate, essentially "cut[ting] it down the middle," that it "had the effect of denying [him] his constitutionally guaranteed right to counsel of his choosing." We disagree.

**{¶24}** The right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense. *See State v. Keenan*, 8th Dist. Cuyahoga No. 89554, 2008-Ohio-807. The right is not absolute, however, and courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Therefore, decisions relating to the substitution of counsel are within the sound discretion of the trial court. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

**{¶25}** In its sound discretion, the trial court permitted Attorney Bradley to participate *to the extent that Hanson requested him to* (i.e., in the mitigation phase of sentencing), even though Attorney Bradley did not file a notice of appearance in the case or notice of substitution of counsel. Notably, Hanson never requested to have his public defender removed from the case, nor did he express any dissatisfaction with his public defender at any point in the plea hearing or sentencing. There is simply nothing in the record to suggest that the trial court denied Hanson his right to counsel.

**{¶26}** In Hanson's third assignment of error, he argues that he was denied effective assistance of counsel.

**{¶27}** To demonstrate ineffective assistance of counsel, defendants must satisfy both parts of a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendants must first show that their trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.* Second, defendants must establish that counsel's "deficient performance prejudiced the defense." *Id.* The failure to prove either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland*, *supra*.

**{¶28}** Within this assignment of error, Hanson only relies on his arguments that he made in the second assignment of error, namely, that because he was denied his right to counsel of his choice, he was denied his right to effective assistance of counsel. We found no merit to that there and we find none here.

**{¶29}** Hanson's second and third assignments of error are overruled.

Due Process

**{¶30}** In his fourth assignment of error, Hanson argues that the "cumulative effect of a number of decisions by the trial court" denied him a fair plea and sentencing hearing, which violated his due process rights.

**{¶31}** He first argues that because he was "denied his choice of defense counsel," his due process rights were violated. For the reasons stated previously, we find no merit to this argument.

**{¶32}** Second, Hanson maintains that the trial court was biased against him "well before the plea and sentencing hearing" because it had already determined that it would not sentence him to the minimum sentence. In support of this argument, he claims that the trial court's actions at the sentencing hearing showed its alleged bias, including the fact that (1) the trial court "conducted an extensive questioning of the victim who, although present, indicated an unwillingness to speak"; (2) the trial court asked the victim a number of leading questions; and (3) the court used the victim's answers to its leading questions to find that Hanson committed almost the "worst form" of the offense.

**{¶33}** As Hanson notes, he did not raise this issue with the trial court. Accordingly, he has waived all but plain error. Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Even if error satisfies these prongs, appellate courts are not required to correct the error. Appellate courts retain discretion to correct plain errors. *Id.* Courts are to notice plain error under Crim.R. 52(B), "'with the utmost

caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Citation omitted.) *Id.*

**{¶34}** At the sentencing hearing, the prosecutor indicated that at first, the victim was reluctant to make a statement. But then, after speaking with a representative from the "victim/witness program," she learned that this "would be her one and only chance." The prosecutor stated to the victim that she did not have to speak to the court. The court then stated, "Will you answer some questions if I asked?" The victim replied that she would. Through the court's questioning, the victim relayed what happened.

**{¶35}** On the night of the assault, but before it had occurred, the victim called police to come to her house to do a "protective sweep" because she feared that Hanson would hurt her. The police came and "looked through her house." After the police left, the victim pushed her couch up against her front door to prevent Hanson from getting into her house.

**{¶36}** After 11:00 p.m. that night, however, Hanson got into the victim's house from another door. The victim was in her bedroom and did not hear him come in; she just saw him walk into her bedroom from the hallway. Hanson accused the victim of having a boyfriend. The court then asked the victim if Hanson hit her with an object, the victim replied, "your honor, I don't remember anything. The only thing I remember is him running towards me with his fist and — I don't know. I saw something black, but I don't know if it was an object or what I was seeing." Hanson proceeded to hit her "a number of times."

{¶37} The victim stated that after the first hit, she only knows what happened from what her ten-year-old daughter witnessed. She remembered waking up one time and her daughter was trying to help her. The next thing she remembered was waking up in the hospital.

{¶38} The victim told the court that she still feared Hanson. During the assault, Hanson broke her nose. Further, as a result of the fight, she can no longer do "too much strenuous activity" because she gets "winded from the chest a lot."

{¶39} The prosecutor stated that he believed this offense to be "the worst form of felonious assault," and asked for "a significant term of incarceration." The prosecutor requested the court to consider the fact that Hanson broke into the victim's home, and also consider the fact that this was not the first time Hanson had been convicted of failing to comply with an order of a police officer. Finally, the prosecutor asked the court to consider the fact that the victim's ten-year-old daughter witnessed Hanson beating her mother up and then had to "relive it in a statement to police." The state requested the court to sentence Hanson to 14 to 16 years in prison.

{¶40} The court then asked the prosecutor to explain the offense of failure to comply. The prosecutor stated that a radio call went out to officers to look for a gold minivan. Lyndhurst police spotted Hanson's vehicle and began pursuing it with their lights and sirens activated. With a passenger in his vehicle, Hanson "sped off at a high rate of speed, ultimately crashing into a chain link fence[.]" Hanson then fled on foot

and was able to evade capture that night, even though police used their K-9 unit to search for him. Hanson was eventually picked up on a warrant by the Fugitive Task Force.

{¶41} Attorney Bradley then spoke to the court. He told the court that Hanson had been in a relationship with the victim for 10 to 12 years. Hanson was the father of all five of the victim's children, including the daughter who witnessed the offense. Attorney Bradley stated that Hanson was filled with remorse and accepted complete responsibility. Attorney Bradley explained that on the night of the offense, Hanson was intoxicated. "Jealously issues motivated him to go over there and confront her. And he was out of control, [plain] and simple." Attorney Bradley disagreed that this was the worst form of the offense because the victim did "not appear" to have "any permanent physical injuries." Attorney Bradley further informed the court that Hanson "had a lot of difficulties in life," including substance abuse issues, and that Hanson did not have a lot of family.

{¶42} Hanson apologized to the victim and his children. He stated that he did not use a weapon in the incident. He then apologized to the court and to the state. He explained that "during the 7 years from my last incarceration," he was "trying to be a role model to [his] kids." He said that he had started a landscaping business and an auto body paint shop, and was not "in the streets" doing anything negative. He addressed the victim and said that he wanted her and the children to feel safe.

**{¶43}** Hanson's brother then spoke to the court. He stated that when he and Hanson were growing up, they "raised each other." He asked the court to consider the fact that his brother had done "a lot of good" and was "a really good man."

**{¶44}** The court proceeded to impose Hanson's sentence. It disagreed with Attorney Bradley that the victim did not have permanent injuries. The court stated that her medical records indicated that she may have some permanent damage to her lungs. The court said that the victim still had breathing problems five months after the beating.

**{¶45}** The court indicated that it considered Hanson's and his brother's statements and considered the fact that Hanson had a hard life. The court said, "[m]y real decision comes from what's invested in me as a judge from this great state of Ohio that gives me the ability to sentence someone. I have to decide a case based upon the facts of the case, the history of the defendant and then make a determination of how do I protect the public as well." The court stated that Hanson's attorneys advocated for a minimum sentence of four years and that the state requested that it sentence Hanson 14 to 16 years. The court said that it took all of that into consideration.

**{¶46}** The court then explained that it viewed the pictures of the victim that were taken after the beating, stating "this was a brutal beating of a human being." The court considered the fact that Hanson climbed "up the back part of the house" to get in and then severely beat the victim in front of his own child. The court said that Hanson left the victim lying on the floor in a fetal position. The court concluded that the offense came "pretty close" to the worst form of the offense.

**{¶47}** The court then discussed the fact that Hanson ran from police and that this was not the first time that he had done so. The court reviewed Hanson's prior criminal history, including drug possession, failure to comply, drug trafficking, illegal processing, and attempted drug trafficking.

**{¶48}** The court then imposed its ten-year sentence as previously set forth.

**{¶49}** After review, we find absolutely no indication of judicial bias. Indeed, the record reflects that the trial court properly considered all of the factors it was required to consider in sentencing Hanson. Thus, we find no error, plain or otherwise.

**{¶50}** Accordingly, Hanson's fourth assignment of error is overruled.

**{¶51}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and

EILEEN T. GALLAGHER, J., CONCUR