[Cite as *State v. George*, 2014-Ohio-2177.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.    100113

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## AARON GEORGE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571620

**BEFORE:**     E.A. Gallagher, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**     May 22, 2014

**ATTORNEY FOR APPELLANT**

John T. Castele
The Rockefeller Building, Suite 13
614 West Superior Avenue
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Nicole Ellis
Assistant County Prosecutor
1200 Ontario Street
Cleveland, Ohio    44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Aaron George appeals his convictions in the Cuyahoga County Court of Common Pleas.   For the following reasons, we affirm.

{¶2}   An indictment was returned against George charging him with kidnapping, two counts of felonious assault, improperly discharging a firearm into a habitation, having weapons while under disability and obstructing official business.   Appellant pled not guilty to the charges and the case proceeded to a jury trial.

{¶3}   The facts presented at trial were as follows: on the evening of February 9, 2013, LaJuana Scales and her 4-year-old daughter, A.G., were at the home of Scales' brother, appellant Aaron George, at 1127 East 113th Street in Cleveland Ohio.   Scales and George were drinking and, at approximately 10:00 p.m., Scales left the house to go to the store with her cousin.   Scales left A.G. at the house with George.   When Scales returned 30 to 40 minutes later, she heard a gunshot as she was approaching the house. When she pulled into the home's driveway, she heard another gunshot and saw George standing in the living room window of the house.   She testified that she did not remember if George had a gun when she saw him.

{¶4}   Scales approached the house and testified that she spoke with George at a side door to the house where the two "started tussling.   I don't know why."   Scales then left after "we got done tussling" and returned to her car.

{¶5}   A 911 call was made regarding the situation at the home.   At trial, Scales did not recall placing the 911 call.   The record reflects that Scales did not wish to testify

at trial due to her relationship with George whom she indicated she wished to protect. The trial court was forced to issue a bench warrant to procure Scales' attendance at trial and she was called as a court's witness after failing to appear and indicating she had "memory problems" regarding the incident.

{¶6} After the 911 call was played at trial, Scales admitted that it sounded like her voice. Scales noted that she sounded intoxicated on the call and maintained that she was not claiming she did not make the call, only that she did not remember doing so at trial. Scales testified that she eventually recovered A.G. from the home after the police intervened.

{¶7} Cleveland police officer Azonna Perez responded to a report of shots fired and spoke with Scales a block from George's home. Scales was visibly upset and wanted her child out of George's house. Perez and other officers secured the perimeter around the home. Police attempts to contact George by knocking on the doors and windows of the home as well as using a loudspeaker were fruitless.

{¶8} After a standoff that lasted over four hours, a police SWAT team breached the house, arrested George and recovered A.G. unharmed. No other persons were found in the home.

{¶9} A shotgun was recovered from a crawl space in the basement of George's home and police found three spent shotgun shell casings in the living room of the home and one live shotgun shell in the front yard.

{¶10} Hours after George's arrest on the morning of February 10, 2013, police received a report of gunfire damage to the home across the street from George's home. Police observed bullet holes consistent with a shotgun entering a window in the home's upstairs bedroom, passing over the bed where the homeowner, 82-year-old Henrietta Melton, had been sleeping and proceeding through to the back wall. Melton's son testified that if the shots had been lower or Melton had moved to sit up in bed, she would have been struck. Melton was shaken up by the incident.

{¶11} Of the two felonious assault charges, the count naming LaJuana Scales as the victim was dismissed pursuant to Crim.R. 29. The jury returned a verdict of guilty on all remaining counts. At sentencing, the trial court merged the felonious assault and improper discharge counts as well as all firearm specifications as allied offenses. The state elected to proceed with sentencing on the improper discharge count. The trial court imposed a six-year prison term on the kidnapping charge to run consecutive to a three-year term for the firearm specification. The court also imposed a six-year term on the improper discharge count, a three-year term on the having weapons while under disability charge, and a one-year term on the obstructing official business charge. All counts were ordered to be served concurrently. This appeal followed.

{¶12} George's first assignment of error states:

The state produced insufficient evidence to sustain the defendant's convictions for kidnapping, felonious assault and improper discharge into a habitation.

{¶13} This court has said that, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry then is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶14} George was convicted of kidnapping in violation of R.C. 2905.01(B)(2) that prohibits one from knowingly restraining another of their liberty under circumstances that create a substantial risk of serious physical harm to the victim. Where, as here, the victim is under 13 years of age, the means by which the restraint is accomplished is immaterial. Restraint of liberty is defined as to limit or restrain a person's freedom of movement. The trial court instructed the jury consistent with these definitions.

{¶15} George argues that the state failed to produce any evidence demonstrating that he knowingly restrained A.G. of her liberty. To restrain the liberty of the other person means to limit one's freedom of movement in any fashion for any period of time. *State v. Holsey*, 8th Dist. Cuyahoga No. 96094, 2011-Ohio-2796, ¶ 13. An offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021,

¶ 20 (8th Dist.). Rather, it depends on whether the restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily. *Id.* The restraint need not be actual confinement, but may be merely compelling the victim to stay where she is. *Id.*, citing *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 WL 1639621 (Nov. 2, 2000); 1974 Legislative Service Committee Comment to R.C. 2905.01.

{¶16} George argues A.G.s liberty was not restrained because there was no evidence that A.G. wanted to leave the home. We find this argument to be without merit. Quoting the Legislative Service Commission Comment to R.C. 2905.01, the Ohio Supreme Court in *State v. Powell*, 49 Ohio St.3d 255, 552 N.E.2d 191 (1990), held that in a prosecution for a kidnapping involving a child under the age of 13, it makes no difference whether the child voluntarily accompanies the kidnapper or submits to the restraint. *Id.* at 263. Merely by keeping the child, the kidnapper restrains her, whether or not physical force was used. *Id.* at 263. Although Powell dealt with a kidnapping charge pursuant to R.C. 2905.01(A), the legislative service commission comment extends equally to violations of both subsections (A) and (B).

{¶17} A.G. was only five years old when George kept her barricaded in his home preventing her mother and the police from gaining access to her. By engaging in a standoff with the police that lasted for several hours, George restrained A.G.'s freedom of movement and unquestionably placed her beyond immediate help. We find that the state presented sufficient evidence that George restrained A.G.'s liberty.

{¶18}   George also argues that the state failed to offer sufficient evidence that the circumstances were such that a substantial risk of serious physical harm to A.G. existed.   We disagree.   R.C. 2901.01(A)(8) defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."   The definition of "serious physical harm to persons" in R.C. 2901.01(A)(5) includes: "(b) any physical harm that carries a substantial risk of death" and "(d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement."

{¶19} The evidence at trial established that George had been drinking alcohol with Scales and that George fired a shotgun several times from his living room.   Scales testified that she recovered A.G. from the living room or dining room of the home. Even if we accepted the argument that this evidence does not establish that A.G. was placed at risk by George's own gun activity, George's subsequent conduct resulted in a standoff with the police lasting several hours and necessitated a forced entry of his home by the SWAT team in order to secure his arrest and the retrieval of A.G.   A.G., held between a breaching SWAT team and a suspect believed to be armed, was unquestionably placed in risk of serious physical harm under these circumstances.   We find that the state presented sufficient evidence to support George's kidnapping conviction.

{¶20} George next argues that the state failed to present sufficient evidence to support his conviction of felonious assault in violation of R.C. 2903.11(A)(2) which provides in relevant part:

(A) No person shall knowingly do either of the following:

* * *

(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.

{¶21} George argues that the state failed to produce sufficient evidence that he knowingly caused or attempted to cause physical harm to Henrietta Melton because no witness saw him pointing the gun at Melton's home and there was no evidence he knew Melton was inside the home. George also argues that the state failed to present sufficient evidence of his identity as the shooter. We are not persuaded by George's arguments.

{¶22} The evidence presented at trial was that a shotgun was fired two to three times. Upon hearing the second shotgun blast, LaJuana Scales observed George standing in his living room. Three spent shotgun shell casings were recovered from George's livingroom and a shotgun was recovered from his home. Aside from A.G., George was the only person found in the house by the SWAT team. Finally, Melton's home directly across the street was struck by gunfire consistent with a shotgun with the pellets passing directly over her bed during the night.

{¶23} Pursuant to R.C. 2901.22(B), a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. "It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death." *State v. Young*, 8th Dist. Cuyahoga No. 99752, 2014-Ohio-1055, ¶ 11, quoting *State v. Perez*, 8th Dist. Cuyahoga No. 91227, 2009-Ohio-959, ¶ 42; *State v. Widner*, 69 Ohio St.2d 267, 270, 431 N.E.2d 1025 (1982). "Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly." *Id.* This court has previously held that "when 'shooting up' takes place in any home or neighborhood, death may be a natural and probable consequence of this act." *State v. Forney*, 8th Dist. Cuyahoga No. 63310, 1993 Ohio App. LEXIS 5182 (Oct. 28, 1993).

{¶24} There can be no doubt from the record that George knew he was firing his weapon in a residential neighborhood late at night when it is reasonably expected that one's neighbors are at home sleeping. The result of firing his shotgun from the front living room of his home and striking the home and nearly striking his sleeping neighbor was entirely to be expected. George's claim of ignorance that his extremely dangerous conduct could have caused physical harm to his neighbor is without merit.

{¶25} George reiterates the same argument regarding the knowingly element of his discharging a firearm into an occupied structure conviction. We reject it for the same reasons.

{¶26} George's first assignment of error is overruled.

**{¶27}** George's second assignment of error states:

The defendant's convictions were against the manifest weight of the evidence.

**{¶28}** A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶29}** In light of the evidence presented at trial and analyzed in the first assignment of error, we cannot say that the finder of fact clearly lost its way in finding appellant guilty of the above offenses.

**{¶30}** George's second assignment of error is overruled.

**{¶31}** George's third assignment of error states:

The trial court erred by admitting the 911 call into evidence as the 911 tape was not properly authenticated.

**{¶32}** The decision whether to admit or to exclude evidence rests within the sound discretion of the trial court. *State v. Brown*, 8th Dist. Cuyahoga No. 99024, 2013-Ohio-3134, ¶ 50, citing *State v. Jacks*, 63 Ohio App.3d 200, 207, 578 N.E.2d 512

(8th Dist.1989).   Therefore, an appellate court that reviews the trial court's decision with respect to the admission or exclusion of evidence must limit its review to a determination of whether the trial court committed an abuse of discretion.   *Id.*, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989).

{¶33} Evid.R. 901 provides in relevant part:

(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

{¶34} In *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 27-29, this court stated:

Evid.R. 901 governs the authentication of demonstrative evidence, including recordings of telephone conversations.   The threshold for admission is quite low, and the proponent of the evidence need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "[T]he proponent must present foundational evidence   that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 25, citing *State v. Payton*, 4th Dist. No. 01-CA2606, [2002-Ohio-508, 2002 Ohio App. LEXIS 496 (Jan. 25, 2002)].   A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence.   *Id.*, citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 * * *.

For a recorded telephone call to be admissible, the recording must be "authentic, accurate, and trustworthy." *Tyler* at ¶ 26, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263 * * *. But, because "conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury," the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be.   *State v. Bell*, 12 Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶ 17, 30.

{¶35} In the present instance, LaJuana Scales testified that the voice on the 911 call sounded like her own voice, albeit in an intoxicated state. This was consistent with her testimony that she had been drinking that night. It is unclear what further evidence George would have us require. In each such instance of identification, the most a witness listening to a recording in court can say is "yes, that sounds like my voice." In fact, here, LaJuana Scales did not deny that it was her voice on the 911 call, stating "I mean, it's there, but I don't remember doing that." We find no abuse of discretion in this instance.

{¶36} George's third assignment of error is overruled.

{¶37} George's fourth assignment of error states:

The defendant was deprived of his constitutional right to counsel.

{¶38} George was arraigned on these charges in the Cuyahoga County Court of Common Pleas on February 22, 2013. At that time, he was found to be indigent and counsel was assigned to represent him. During the pendency of the case, seven pretrials were conducted where counsel was present and discovery was exchanged. On April 22, 2013, a trial date was set and, in fact, trial commenced as scheduled. On the appointed day, the court engaged George in a conversation with respect to waiver of trial by jury as to certain offenses, a jury was selected and sworn and opening statements were made by counsel.

{¶39} After opening statements, George, for the first time, indicated to the court that he was discharging his counsel. The court then excused the jury and allowed

George to explain his reasoning for discharging his attorney and heard his request for the appointment of new counsel. The court denied his request and informed George that he would not appoint new counsel as trial had commenced and offered him two options: that he could continue with his current counsel or proceed pro se. The court then engaged in a full colloquy with George with respect to pro se representation. George elected to proceed pro se after that discussion and signed a waiver of counsel form. The court then appointed the discharged attorney to stand by counsel.

**{¶40}** The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense." *See also Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the Sixth and Fourteenth Amendments of the United States Constitution guarantee that a defendant in a criminal action must be afforded the right to assistance of counsel).

**{¶41}** That right, however, does not guarantee that an indigent defendant have the right to specific counsel of his choice. *State v. Chavez,* 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, ¶ 39, citing *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). "[C]ourts have 'wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.'" *State v. Hanson*, 8th Dist. Cuyahoga No. 99362, 2013-Ohio-3916, ¶ 24, quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Therefore, decisions

relating to the substitution of counsel are within the sound discretion of the trial court. *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

**{¶42}** The record is clear that in this case George did knowingly, intelligently and voluntarily waive his right to counsel both in open court and in writing.

**{¶43}** George's fourth assignment of error is overruled.

**{¶44}** George's fifth assignment of error states:

> The trial court committed plain error in not instructing the jury on the mitigating factors with respect to kidnapping contained in R.C. 2905.01(C).

**{¶45}** A first degree felony kidnapping under R.C. 2905.01(B) is reduced to a second degree felony if the defendant "releases the victim in a safe place unharmed." R.C. 2905.01(C). George argues that the trial court erred in failing to provide a R.C. 2905.01(C) instruction to the jury. Because George did not request such an instruction or object to the jury instructions, we review this claim for plain error. *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 32; Crim.R. 30(A). Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id.*

**{¶46}** In *State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 55, this court stated:

> Whether a kidnapper releases his victim unharmed in a safe place "is not an element of the offense; rather, the accused must plead and prove it in the fashion of an affirmative defense." *State v. Sanders*, 92 Ohio St.3d 245, 265, 2001-Ohio-189, 750 N.E.2d 90; *State v. Cornute*, 64 Ohio App.2d 199, 412 N.E.2d 416 (10th Dist.1979) ("The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree '[i]f the offender releases the victim in a safe place unharmed' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such").

**{¶47}** "The court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury." *State v. Ogletree*, 8th Dist. Cuyahoga No. 79882, 2002-Ohio-4070, ¶ 14, citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981), syllabus.

**{¶48}** Upon review of the record, we find that George has failed to demonstrate that the trial court's failure to, sua sponte, give the jury a R.C. 2905.01(C) instruction affected his substantial rights. As discussed in George's first assignment of error, George's conduct placed A.G. between a breaching SWAT team and a suspect believed to be armed. Rather than releasing A.G. in a safe place unharmed, George's conduct placed her in significant danger and required SWAT intervention to liberate her.

**{¶49}** On these facts, the trial court's failure to issue a limiting instruction did not rise to the level of plain error.

**{¶50}** George's fifth assignment of error is overruled.

**{¶51}** George's sixth assignment of error states:

The defendant was deprived his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

**{¶52}** Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal. *State v. Baker*, 8th Dist. Cuyahoga No. 95300, 2011-Ohio-2784, ¶ 59, citing *State v. Garner*, 74 Ohio St.3d 49, 656 N.E.2d 623 (1995).

**{¶53}** In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 52. To affirm in spite of multiple errors, we would have to determine that the cumulative effect of the errors is harmless beyond a reasonable doubt. *State v. Williams*, 8th Dist. Cuyahoga No. 94261, 2011-Ohio-591, ¶ 25, citing *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987) (stating that the errors can be considered harmless if there is overwhelming evidence of guilt or other indicia that the errors did not contribute to the conviction).

**{¶54}** In the present instance, we do not find that multiple errors were committed at trial. Therefore, George's argument is without merit and overruled.

**{¶55}** The judgment of the trial court is affirmed.

**{¶56}** It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR