[Cite as *State v. Woodson*, 2011-Ohio-2796.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95852

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DARREN WOODSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540104

**BEFORE:**   E. Gallagher, J., Sweeney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**   June 9, 2011

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio   44067


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Oscar E. Albores
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113


EILEEN A. GALLAGHER, J.:

**{¶ 1}**  Darren Woodson ("Appellant") appeals from his convictions for kidnapping and domestic violence entered on September 28, 2010, in the Cuyahoga County Court of Common Pleas.  Appellant argues that the evidence presented at his bench trial was insufficient as a matter of law to support his kidnapping conviction and that the trial court at sentencing did not properly consider the purposes and principles of felony sentencing contained in R.C. 2929.11 or the seriousness and recidivism factors in R.C.

2929.12.   For the following reasons, we affirm.

{¶ 2}   Appellant was indicted on August 2, 2010 with kidnapping in violation of R.C. 2905.01(A)(3) (Count 1) and domestic violence in violation of R.C. 2919.25(A) (Count 2).   Appellant pled not guilty and his case proceeded to a bench trial on September 28, 2010.

{¶ 3}   At trial, Jatoya Greathouse ("Greathouse") testified that on the morning of July 15, 2010, appellant called her and requested that she drive him to see his parole officer.   Appellant and Greathouse had known each other for three and a half years and share a two-year-old daughter.   Despite the existence of a restraining order in her favor that prevented the appellant from contact with Greathouse, she agreed to give him a ride.   Greathouse drove to appellant's grandmother's house at 1416 East 84th Street, Cleveland, Ohio, where appellant had been living since she and appellant had separated.   Appellant was on the porch with a female friend.   Also present was appellant's cousin, Cleveland Frazier.

{¶ 4}   Appellant entered Greathouse's car and they began arguing over the female friend.   Appellant exited the car with Greathouse's cell phone for the purpose of calling another male with whom he believed Greathouse was romantically involved.   Greathouse also exited her car and a struggle over the cell phone then ensued between herself and the appellant.   Greathouse

stands 5'4" and weighs 125 pounds while appellant is 6'1" and weighs 160 pounds. During the struggle over the phone, appellant overpowered Greathouse and held her up against a car that was parked in the driveway of the home. Greathouse held onto appellant's pants and was eventually able to knock the cell phone out of his hand. Appellant then began to choke Greathouse with two hands around her neck while she was pressed against the car. Greathouse tried to free herself but was unable to do so. Eventually, Cleveland Frazier intervened and he was able to pull the appellant away from Greathouse.

{¶ 5} Greathouse testified that once they were separated, the appellant approached her car for the purpose of taking her keys. Greathouse testified that a second struggle occurred inside the car where appellant, sitting in the driver's seat, again choked her with two hands while she was in the passenger seat. Appellant eventually released Greathouse and, armed with a small foot-long souvenir baseball bat, she fled into appellant's grandmother's house to use the home phone to call 911. She testified that she was unable to use her own cell phone to call 911.

{¶ 6} While she was in the process of calling 911 with the home phone, the appellant entered the house, knocked her down and into a chair and again began to choke her. Greathouse struck appellant in the head with the house

phone and, with the assistance of Frazier, she was able to get appellant off of her. Frazier and the appellant exited the house and Greathouse locked herself inside the home until police arrived at the scene.

{¶ 7} Cleveland Frazier testified that he witnessed the appellant choke Greathouse outside of the home and also witnessed the latter choking episode inside of the home. His version of the altercation did not include any choking inside of the car, however.

{¶ 8} The State's third, and final, witness, Tiana Lewis, arrived on the scene midway through the altercation and saw the appellant and Greathouse "tussling." She observed Greathouse enter the house and also observed appellant choke her until she and Frazier assisted in pulling the appellant off of Greathouse. Finally, appellant testified on his own behalf and denied choking Greathouse at any point during the altercation.

{¶ 9} At the conclusion of the State's case, the defense made a motion for a Rule 29 judgment of acquittal. The trial court denied appellant's motion. Appellant renewed his Rule 29 motion at the close of the trial. The trial court again denied the motion and returned a guilty verdict as to both counts. Appellant was sentenced to three years on Count 1 and one and a half years on Count 2 to run consecutive to one another. Appellant was also advised of a five years mandatory period of postrelease control. It is from

this judgment that appellant presently appeals.

{¶ 10} In his first assignment of error, appellant argues that the trial court erred in failing to grant his Rule 29 motion for acquittal because the evidence produced by the State at trial was insufficient as a matter of law to support a guilty verdict as to the charge of kidnapping.

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (superseded by statute and constitutional amendment on other grounds). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. (Cook, J., concurring.)

{¶ 12} The elements of the kidnapping offense for which appellant was convicted are set forth in R.C. 2905.01: "(A) No person, by force, threat, or

deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (3) To terrorize, or to inflict serious physical harm on the victim or another."

{¶ 13} Appellant argues that the trial court erred in denying his motion for acquittal as to the kidnapping charge because the state failed to present evidence establishing that appellant restrained Greathouse's liberty. This court has previously defined the element of "restrain the liberty of the other person" to mean "to limit one's freedom of movement in any fashion for any period of time." *State v. Wingfield* (Mar. 7, 1996), Cuyahoga App. No. 69229; see, also, *State v. Walker* (Sept. 2, 1998), Medina App. No. 2750-M, (restraint of liberty does not require prolonged detainment); *State v. Messineo* (Jan. 6, 1993), Athens App. Nos. 1488 and 1493, (grabbing victim's arm and shaking her constituted restraint).

{¶ 14} "[Furthermore,] [a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he is.' " *State v. Mosley,* 178 Ohio App.3d 631, 635-636, 899

N.E.2d 1021, quoting *State v. Wilson* (Nov. 2, 2000), Franklin App. No. 99AP-1259, quoting 1974 Committee Comment to R.C. 2905.01.

{¶ 15} We have previously held that choking can constitute a restraint of liberty. *State v. Ellis*, Cuyahoga App. No. 90844, 2008-Ohio-6283, at ¶31, overruled on other grounds. Other Ohio courts have similarly treated instances of choking as kidnapping. See *State v. Williamson* (Jan. 10, 1994), Clermont App. No. CA93-04-034; *State v. Snodgrass* (Oct. 26, 1994), Wayne App. No. 2879.

{¶ 16} Similarly, in the instant matter, viewing the evidence in a light most favorable to the State, we find that the State presented sufficient evidence of kidnapping. Greathouse testified that while being choked against a car by appellant she tried to free herself but could not. Additionally, when Greathouse sought to call 911 for help, appellant pursued her into the house, knocked her into a chair, and choked her. His actions restrained her liberty and prevented her from calling authorities for help. Furthermore, though not addressed by appellant, we note that the purpose to terrorize, as required by R.C. 2905.01(A)(3), is satisfied by the act of choking as we previously held in *State v. Wingfield* (Mar. 7, 1996), Cuyahoga App. No. 69229.

{¶ 17} Accordingly, we conclude this evidence, if believed, would

convince the average mind of the defendant's guilt of kidnapping beyond a reasonable doubt. Therefore, the appellant's first assignment of error is overruled.

{¶ 18} Appellant's second assignment of error asserts that the trial court at sentencing failed to properly consider the purposes and principles of felony sentencing contained in R.C. 2929.11 or the seriousness and recidivism factors of R.C. 2929.12.

{¶ 19} This court has recognized that we review felony sentences using the *Kalish* framework. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124; *State v. Brunning*, Cuyahoga App. No. 95376, 2011-Ohio-1936. In *Kalish*, the Ohio Supreme Court applied a two-prong approach to appellate review of felony sentences. Appellate courts must first "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶4. If this first prong is satisfied, then we review the trial court's decision under an abuse-of-discretion standard. Id. at ¶4 and 19.

{¶ 20} In the first step of our analysis, we review whether the sentence is contrary to law as required by R.C. 2953.08(G). "[T]rial courts have full discretion to impose a prison sentence within the statutory range and are no

longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." Id. at ¶11, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶100. The *Kalish* court declared that although Foster eliminated mandatory judicial fact-finding, it left R.C. 2929.11 and 2929.12 intact. *Kalish* at ¶13. As a result, the trial court must still consider these statutes when imposing a sentence. Id.

**{¶ 21}** R.C. 2929.11(A) provides that:

**{¶ 22}** "A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing[,] * * * to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."

**{¶ 23}** R.C. 2929.12 provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

**{¶ 24}** The *Kalish* court also noted that R.C. 2929.11 and 2929.12 are not fact-finding statutes like R.C. 2929.14. *Kalish* at ¶17. Rather, they

"serve as an overarching guide for trial judges to consider in fashioning an appropriate sentence." Id. Thus, "[i]n considering these statutes in light of *Foster*, the trial court has full discretion to determine whether the sentence satisfies the overriding purposes of Ohio's sentencing structure." Id.

**{¶ 25}** In the instant case, we do not find appellant's sentence to be contrary to law. The trial court sentenced appellant to consecutive sentences within the permissible statutory range for his convictions. In the sentencing journal entry, the trial court acknowledged that it had considered all factors of law and found that prison was consistent with the purposes of R.C. 2929.11. On these facts, we cannot conclude that his sentence is contrary to law.

**{¶ 26}** Having satisfied the first step, we next consider whether the trial court abused its discretion. *Kalish* at ¶4 and 19. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id. at ¶19, quoting *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶ 27}** The trial court did not abuse its discretion in imposing a four and a half year prison sentence in the present case. The trial court allowed appellant and his counsel to advocate a lighter sentence. Appellant argued

that his legal troubles arose solely from interactions with Ms. Greathouse. The court heard from Ms. Greathouse who feared that if appellant was quickly released he would threaten her family. The court noted that appellant's conduct was so serious that a member of his own family and household felt compelled to testify truthfully against him. We find nothing in the record to suggest that the trial court's decision was unreasonable, arbitrary, or unconscionable. Accordingly, appellant's second assignment of error is overruled.

**{¶ 28}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR