[Cite as *State v. Kappenhagen*, 2014-Ohio-3916.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100798**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MICHAEL J. KAPPENHAGEN

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-567907-A

**BEFORE:** McCormack, J., Blackmon, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Bldg., Suite 940
526 Superior Ave.
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Steven N. Szelagiewicz
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Michael J. Kappenhagen, appeals his conviction for kidnapping with firearm specifications, tampering with evidence with a firearm specification, and having weapons while under disability. Kappenhagen also appeals his consecutive sentence of 19 years. After a thorough review of the record, we affirm.

## Procedural History

{¶2} Kappenhagen was indicted on a multiple-count indictment as follows: Count 1, aggravated burglary in violation of R.C. 2911.11(A)(2); Count 2, felonious assault of Cornell Stevenson in violation of R.C. 2903.11(A)(2); Count 3, kidnapping of Robin Johnson in violation of R.C. 2905.01(A)(3); Count 4, felonious assault of Robin Johnson in violation of R.C. 2903.11(A)(2); Count 5, aggravated menacing of Patrolman Neil T. Pesta in violation of R.C. 2903.21(A); Count 6, kidnapping of minor child, M.J., in violation of R.C. 2905.01(A)(1); Count 7, kidnapping of minor child, C.S., in violation of R.C. 2905.01(A)(1); Count 8, tampering with evidence in violation of R.C. 2921.12(A)(1); and Count 9, having weapons while under disability in violation of R.C. 2923.13(A)(2).

{¶3} Counts 1-4, 6, and 7 contained the following specifications: one-year firearm specification in violation of R.C. 2941.141(A); three-year firearm specification in violation of R.C. 2941.145(A); forfeiture of property under R.C. 2941.1417(A); notice of prior conviction under R.C. 2929.13(F)(6); and repeat violent offender specification ("RVO") under R.C. 2941.149(A). The notice of prior conviction and the RVO were

bifurcated. Counts 5 and 9 contained the forfeiture specification. And Count 8 contained both firearm specifications as well as the forfeiture specification.

{¶4} Kappenhagen was referred to the psychiatric clinic for competency and sanity evaluations on November 26, 2012. The competency and sanity reports, which were prepared on January 3, 2013, stated that Kappenhagen had no diagnosis, he was sane at the time of the alleged acts, and he was competent to stand trial and assist in his own defense. The parties stipulated to the contents in the reports.

{¶5} Prior to trial, the state filed a motion to introduce evidence of other acts under Evid.R. 404(B), regarding Kappenhagen's possession of firearms, which the trial court granted.

{¶6} The defense stipulated to the following evidence: a certified notice of a prior conviction of aggravated robbery with a one-year firearm specification (State's exhibit No. 1); the DNA laboratory examination report indicating Kappenhagen's DNA recovered from the weapons (State's exhibit No. 2); and the police report indicating the operability of the firearms (State's exhibit No. 3).

{¶7} A jury trial commenced on November 4, 2013. At the close of the state's case and again at the close of trial, defense counsel moved for a Crim.R. 29 judgment of acquittal. The trial court denied both motions.

{¶8} The jury returned a verdict of not guilty on Counts 1, 2, 4, 5, 6, and 7. The jury returned a verdict of guilty on Counts 3, 8, and 9. In addition, the jury found Kappenhagen guilty of the one-year and three-year firearm specifications and the

forfeiture specification on Count 3, as well as finding that the victim was released in a safe place unharmed. The jury also found Kappenhagen guilty of the one-year firearm and forfeiture specifications on Count 8. The trial court then found Kappenhagen guilty of the RVO specification and notice of prior conviction. The court ordered a presentence investigation report and scheduled the matter for sentencing.

{¶9} On December 12, 2013, the trial court sentenced Kappenhagen to the maximum eight years incarceration on Count 3, kidnapping of Robin Johnson, plus three years for the firearm specification, merging the one-year and the three-year specifications. The trial court sentenced Kappenhagen to 36 months on Count 8, tampering with evidence, and 36 months on Count 9, having weapons while under disability. Finally, the court imposed an additional eight years on the RVO specification to Count 3. The court ordered the sentence for Counts 3, 8, and 9 to run concurrently and the sentence for the firearm specification and the RVO specification to be served consecutively to and prior to the sentence in Count 3, the underlying charge, for an aggregate sentence of 19 years.

{¶10} Kappenhagen filed this timely appeal.

## Evidence Presented at Trial

{¶11} The victim, Robin Johnson, testified that she met Kappenhagen in or about April 2012. She testified that she went out with Kappenhagen approximately six times before she moved into the upstairs of a home on Hosmer Avenue with her two minor children, M.J. and C.S., in September. Other than her two children, no one resided in

the home with her. Kappenhagen visited Johnson approximately eight times at the Hosmer Avenue home, sometimes just "popping over," uninvited, and sometimes spending the night. She stated that she considered Kappenhagen her friend and she never considered him as a boyfriend.

{¶12} Johnson testified that she ended the relationship with Kappenhagen on the night of October 4, 2012, telling Kappenhagen that she needed her space and he needed to find "somewhere else to go." There was an argument, and Kappenhagen removed his few belongings from the home and left.

{¶13} Later that evening, Kappenhagen returned to Johnson's home, where Johnson was sitting in the kitchen with her sister, Tiesha Johnson ("Tiesha"). Tiesha testified that she visited with her sister that night on Hosmer Avenue. She also testified that Johnson lived there with her two children. Johnson and Tiesha both testified that Johnson told Kappenhagen to leave and, in response, Kappenhagen pulled a handgun out and pointed it at both of them, threatening to shoot them. Eventually, Kappenhagen agreed to leave if Johnson promised not to call the police. Kappenhagen left the premises, and Johnson did not call the police. Johnson testified that she did not see Kappenhagen again until the evening in question.

{¶14} On October 10, 2012, Johnson saw Kappenhagen at a convenience store not far from her house around 6:00 in the evening. He apologized for his previous behavior and asked to spend the night at Johnson's place. Johnson testified that she told Kappenhagen he could not come to the house and that she had nothing to say to him.

She also told Kappenhagen that the father of her baby, Cornell Stevenson, was waiting for her at her place. She phoned her sister and asked her to give Kappenhagen a ride to the west side. Johnson stated that her sister agreed to drive him because she was in the area and headed in that direction. Johnson returned home.

{¶15} Tiesha testified that later that evening, approximately 9:00 p.m., Kappenhagen showed up at her apartment and asked for a ride back to the east side. She stated that Kappenhagen asked for a ride to Johnson's house, informing her that he and Johnson had made up. She agreed, and when she approached her sister's house, she attempted to reach her sister by telephone to no avail. When she arrived at her sister's home, she advised Kappenhagen to wait in the car while she went to the house to speak with Johnson. In speaking with Johnson, she learned that her sister did not want Kappenhagen there. When Tiesha advised Kappenhagen that Johnson did not want him back, he asked Tiesha to drop him off at a gas station on E. 71st Street and Harvard Avenue. Tiesha testified that she dropped Kappenhagen off at approximately 10:00 p.m.

{¶16} Johnson testified that after she returned home from the convenience store, she and Stevenson had drinks, smoked marijuana, and had sexual intercourse. When they were finished having sex, she went to the kitchen table to pour herself a shot, and while taking the shot, Stevenson, who was naked, began to walk towards the bathroom. She stated that, as she was taking her shot and Stevenson was walking towards the bathroom, the door opened and Kappenhagen came through the door, holding a handgun

in his left hand and a rifle in his right hand. She testified that the handgun was the same gun Kappenhagen pointed at her the week before.

{¶17} Johnson stated that Kappenhagen forced Stevenson down the stairs and eventually out of the house, while holding both weapons. As Kappenhagen yelled at Stevenson to "get the f * * * out," Johnson saw Kappenhagen pull the clip on one of the guns and she assumed it was to show them that the gun was loaded. Kappenhagen allowed Johnson to retrieve Stevenson's clothes, and Kappenhagen threw them to Stevenson as he waited on the stairs. While Kappenhagen was speaking with Stevenson, Johnson ran to her bedroom and called 911 on her cell phone, whispering to the operator because she did not want Kappenhagen, who was "not ten feet" away from her, to hear her. After placing the call, Johnson kept the operator on the phone, and she placed her phone in the waistband of her pants when Kappenhagen returned to the kitchen in an attempt to conceal the phone from Kappenhagen.

{¶18} Johnson testified that after Kappenhagen returned to her kitchen, he initially stood in the doorway with the guns and then sat at the table, holding the guns while expressing his feelings for her and his desire to be with her. According to Johnson, he first said that he killed Stevenson and he then changed his story, telling her that he was going to "shoot [Stevenson] in the head in front of [Johnson]."

{¶19} Johnson testified that Kappenhagen sat at the table for approximately 15 minutes and that he was pointing a gun at her the entire time. She stated that during this time, Kappenhagen said to her, "Oh, bitch, I told you I loved you and this is how you do

me?" She further stated that Kappenhagen was "really pissed, biting on his lips" and he continued to tell her "how f * * *d up [she is]" for being with Stevenson. She testified that she was "deathly afraid" and feared for her life and the lives of her children. She believed that Kappenhagen wanted to kill her for choosing Stevenson over him, stating that he had a "redness in his eyes," and he was "enraged and upset" and "foaming [at the mouth]." He also showed her that his gun was loaded, and she stated that she believed "he planned on using it."

{¶20} Johnson asked Kappenhagen if they could go outside to check on Stevenson. According to Johnson, Kappenhagen agreed to go outside only to shoot Stevenson so that he need not worry about him anymore. On the way down the stairs, Kappenhagen remained two or three steps behind Johnson, holding the two guns behind her and telling her to go downstairs.

{¶21} When they got outside the home, Johnson saw a police officer, who told Kappenhagen to "put the guns down." As she stood by the door, she heard a gunshot and saw Kappenhagen run back inside the house. Johnson stated that she then ran to the side of the house that was across from her house, where a police officer rushed her to a waiting patrol car across the street. Kappenhagen then called Johnson on her cell phone. Johnson told Kappenhagen to come out of the house, and he refused. She testified that Kappenhagen said he thought the police would kill him and that perhaps he should put one of the children over his head and another one over his chest when he came outside.

She was concerned for her children. Johnson later identified the pieces of the rifle that Kappenhagen aimed at her, stating that the gun was not broken that evening.

{¶22} Stevenson testified that, on the night in question, he had come to Johnson's house to celebrate his birthday. He said that he and Johnson had discussions that evening about the possibility of the two of them getting back together. After putting the children down to sleep, they had dinner around 9:00 p.m. and then engaged in sexual intercourse. Stevenson stated that when they had finished having sex, he began to walk through the kitchen, naked, in order to access the bathroom; however, before he could reach the bathroom, the back door opened and he saw a man, whom he later identified as Kappenhagen, pointing a rifle at his face and holding a smaller handgun at his side. He testified that the door had been locked and there was no key in that door at any time during his visit.

{¶23} Stevenson further testified that while Kappenhagen was pointing the rifle at him, he pointed the smaller gun as well. Kappenhagen repeatedly told Stevenson to leave. Stevenson looked behind him at Johnson, wondering who Kappenhagen was and what was happening. Kappenhagen eventually forced Stevenson out of the house, and Stevenson knocked on the downstairs neighbor's door, asking them to call the police. Stevenson stated that he put his clothes on in the hallway landing and ran outside. Stevenson went to the corner store and phoned the police himself. He learned that officers had been dispatched to the house already. Stevenson later identified the rifle that

Kappenhagen had pointed at him, stating that the rifle was in one piece that evening in October.

{¶24} Officer Neil Pesta testified that he and his partner, Brian Kellums, responded to a call from dispatch regarding a male with two guns on Hosmer Avenue. They arrived at the Hosmer Avenue home approximately 12:30 a.m. on October 11, 2012, and learned that it was a hostage situation. Officer Pesta testified that he saw a black female, whom he believed to be the victim, come out of the house. He saw a white male follow directly behind the female. The male, whom he identified as Kappenhagen, was holding a long brown rifle in his left hand and a silver handgun in his right hand. Officer Pesta testified that when he saw the two guns in Kappenhagen's hands, he yelled for Kappenhagen to show his hands and then saw Kappenhagen raise his left hand up with the rifle, toward the officer's direction. Officer Pesta fired one round at Kappenhagen, and Kappenhagen ran back inside the house. The officer stated that he yelled for the female to come towards him. He stated that she informed him that her children were inside the home. Officer Pesta identified the guns that Kappenhagen possessed that evening. He further testified that the rifle appeared completely intact and fully operational at the time of the incident.

{¶25} Sergeant Edward Lentz, Sergeant Larry Hughes, and SWAT Officer Ariel Rojas all reported to the scene. They were advised that it was a hostage situation because the suspect was in the house with the children. Sergeant Lentz testified that he spoke with Kappenhagen when Kappenhagen called Johnson's cell phone from the house.

He stated that Kappenhagen told him that he knew he was in trouble and that he was concerned about going to prison. All three of the officers testified that Kappenhagen remained in the home for approximately an hour and a half during police presence, eventually coming out of the house and turning himself in.

{¶26} Sergeant Carl Hartman, an internal affairs investigator with the Cleveland Police Department, testified that in the course of his investigation, he recovered two guns that had been "shoved way down" inside a vent in the Hosmer Avenue home. He stated that one of the weapons was a rifle that appeared to be broken or cut in half. He further stated that it would not have been possible to put the entire rifle in the vent in one piece and that he and the other officers had to tear out the duct work in the basement in order to retrieve the rifle.

{¶27} Michael Gibbs, a detective in the Crime Scene Unit, identified the photographs he took of the crime scene, which included photos of a damaged rifle and a handgun that was wrapped in a blanket. He testified that the rifle was discovered in several pieces. Detective Gibbs swabbed the weapons for DNA. The DNA report, to which the defense stipulated, revealed Kappenhagen's DNA on the recovered weapons.

{¶28} After the state rested, Kappenhagen testified on his own behalf. He testified that he lived with Johnson at the Hosmer Avenue home and he paid for some of the living expenses. He stated that he kept the guns in the attic; however, when he heard arguing in the home, he retrieved the guns, fearing for the safety of the people in the home. Kappenhagen denied pointing the guns at Stevenson or Johnson. He admitted,

however, to "rais[ing] the gun up" and telling Stevenson to leave. Kappenhagen stated that after Stevenson left, he had a conversation with Johnson upstairs, though he denied threatening her that evening. Finally, he testified that he "shoved" the guns down a vent because he "didn't want to do a lot of time," and in the process, "the butt broke off."

## Assignments of Error

I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence to sustain a conviction.

II. Appellant's convictions are against the manifest weight of the evidence.

III. The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and H.B. 86.

## Sufficiency of the Evidence

{¶29} In his first assignment of error, Kappenhagen contends that the state failed to present sufficient evidence to sustain a conviction for the kidnapping of Robin Johnson with the use of a firearm and tampering with the evidence.

{¶30} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶31} The jury found Kappenhagen guilty of kidnapping Robin Johnson in violation of R.C. 2905.01(A)(3). That section provides that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * in order [t]o terrorize, or to inflict serious physical harm on the victim or another." *Id.*

{¶32} This court has previously defined "'restrain the liberty of the other person'" as "'limit[ing] one's freedom of movement in any fashion for any period of time.'" *State v. Woodson*, 8th Dist. Cuyahoga No. 95852, 2011-Ohio-2796, ¶ 13, quoting *State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867, * 6 (Mar. 7, 1996); *see also State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067, * 5 (Sept. 2, 1998) (restraint of liberty involves placing the victim in the offender's power and beyond immediate help, even though temporarily, and does not require prolonged detainment).

{¶33} Regarding additional elements of kidnapping under R.C. 2905.01(A)(3), this court has previously held that "terrorize" is a common word and means "to fill with terror or anxiety." *State v. McDougler*, 8th Dist. Cuyahoga No. 86152, 2006-Ohio-100, ¶ 16. Additionally, the offense of kidnapping does not require that the offender actually cause

any injury to the victim. *See State v. Lavelle*, 5th Dist. Stark No. 07 CA 130, 2008-Ohio-3119.

{¶34} The jury also found Kappenhagen guilty of the one-year and three-year firearm specifications. Under R.C. 2941.141(A), the sentencing court must impose a one-year mandatory prison term upon the offender "if the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." R.C. 2941.145(A) provides for a mandatory three-year prison term if the offender had a firearm on his person or under his control while committing the offense "and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense."

{¶35} Here, viewing the evidence in a light most favorable to the state, we find that the state provided sufficient evidence of kidnapping with the accompanying firearm specifications. First, Johnson testified that Kappenhagen initially stood in the doorway holding two guns and then pointed a gun at her for at least 15 minutes while he sat at her kitchen table and berated her. During this time, Kappenhagen was enraged and appeared to be "foaming [at the mouth]," expressing anger towards Johnson for the way he believed Johnson treated him. Any jury could have found, under these circumstances, that Kappenhagen restrained Johnson's liberty.

{¶36} Second, a reasonable jury could have found that Kappenhagen's actions demonstrated an intent to terrorize or cause physical harm. Johnson testified that Kappenhagen initially told her that he killed Stevenson but later told her that he was

going to kill Stevenson in front of her, "shoot[ing] him in the head," so that he would not have to worry about Stevenson anymore. She stated that he showed her the gun was loaded and she believed Kappenhagen wanted to kill her for choosing another man. We therefore conclude that the above evidence, if believed, would convince the average mind of Kappenhagen's guilt of kidnapping beyond a reasonable doubt.

{¶37} We also find that this evidence was sufficient to show that Kappenhagen had on his person, or within his control, two firearms. Additionally, the evidence, if believed, was sufficient to demonstrate that Kappenhagen used a firearm to facilitate the kidnapping of Robin Johnson.

{¶38} Finally, the jury found Kappenhagen guilty of tampering with evidence. R.C. 2921.12(A)(1) provides as follows:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶39} We find that the evidence presented at trial is sufficient to show that Kappenhagen tampered with evidence. Sergeant Hartman testified that he recovered two guns that had been "shoved way down" inside a vent in the Hosmer Avenue home and that one of the weapons was a rifle that appeared to be broken or cut in half. He further testified that it would not have been possible to put the entire rifle in the vent in one

piece. Detective Gibbs testified that the rifle was discovered in several pieces. Both Johnson and Stevenson identified the rifle as the gun Kappenhagen pointed at them, and they testified that the rifle was in one piece when they last saw it. Sergeant Lentz testified that Kappenhagen told him that he knew he was in trouble and that he was concerned about going to prison, and Kappenhagen admitted that he "shoved" the guns down a vent because he "didn't want to do a lot of time." This evidence, if believed, was sufficient to show that Kappenhagen attempted to alter, destroy, or conceal his two weapons in order to prevent the use of the weapons as evidence against him.

{¶40} Viewing the above evidence in a light most favorable to the prosecution, we find that any rational trier of fact could find the essential elements of kidnapping with the accompanying firearm specifications and tampering with evidence beyond a reasonable doubt.

{¶41} Kappenhagen's first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶42} In his second assignment of error, Kappenhagen contends that his convictions are against the manifest weight of the evidence.

{¶43} While the test for sufficiency of the evidence requires a determination whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. Also unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶44}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶45}** Kappenhagen argues that there is no evidence he knowingly committed any crime against Johnson or that he intended to cause any harm. We disagree.

**{¶46}** As previously stated, kidnapping in violation of R.C. 2905.01(A)(3) prohibits any person, by force, threat, or deception, from restraining the liberty of another in order to terrorize or inflict serious physical harm on another. At trial, Johnson testified that Kappenhagen held a gun in one hand and pointed a second gun at her for at least 15 minutes while he sat at her kitchen table and berated her. She also testified that

he was enraged and appeared to be "foaming [at the mouth]," expressing anger towards Johnson for the way he believed Johnson treated him, and she was "deathly afraid" and feared for her life and the lives of her children. Johnson further testified that during this time, Kappenhagen told her that he killed Stevenson, only later changing his story to say that he was going to "shoot [Stevenson] in the head in front of [her]." Finally, Johnson testified that Kappenhagen showed her that the gun was loaded and she believed he wanted to kill her for choosing Stevenson over him.

{¶47} The state also presented the testimony of several police officers on the scene. Sergeant Lentz testified that Kappenhagen told him that he knew he was in trouble and that he was concerned about going to prison. Sergeant Hartman and Detective Gibbs testified that a rifle was discovered in several pieces in a vent inside the home. Sergeant Hartman stated that it would have been impossible to put the entire rifle in the vent in one piece. Both Johnson and Stevenson identified the recovered rifle as the gun Kappenhagen pointed at them, and they testified that the rifle was in one piece when Kappenhagen pointed it at them. Furthermore, Kappenhagen admitted that he "shoved" the guns down a vent because he "didn't want to do a lot of time." He testified, however, that he did not threaten Johnson.

{¶48} Based upon the record, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. The state presented evidence that Kappenhagen restrained Johnson's liberty with the purpose of terrorizing or inflicting serious physical harm and that he attempted to conceal or destroy evidence that

may have been used against him. While Kappenhagen testified at trial that he did not threaten Johnson, the jury found the victim's testimony credible. As such, we cannot say that the jury clearly lost its way, thus creating such a manifest miscarriage of justice that the conviction must be reversed.

{¶49} Kappenhagen's second assignment of error is overruled.

### Consecutive Sentence

{¶50} In his third assignment of error, Kappenhagen claims that the trial court did not make the appropriate consecutive sentence findings. In support of his argument, Kappenhagen "acknowledge[s] that the trial court made findings," yet he states that he includes this assignment of error "to preserve any future potential appellate and/or other remedies."

{¶51} Here, Kappenhagen was convicted of three of the nine counts contained in the indictment: Count 3, kidnapping (and both one-year and three-year firearm specifications); Count 8, tampering with evidence (and one-year firearm specification); and Count 9, having weapons while under disability. The trial court sentenced him to eight years on the kidnapping, 36 months on the tampering charge, and 36 months on the weapons charge, ordering the sentences to be run concurrently. The court, however, sentenced Kappenhagen to an additional eight years for the repeat violent offender specification and three years for the firearm specification, ordering these sentences to be served consecutively to each other and consecutive to the base charge on Count 3.[1]

---

[1] The court merged the one-year and three-year firearm specifications contained in Count 3.

{¶52} Generally speaking, where multiple prison terms are imposed on an offender for convictions of multiple offenses, R.C. 2929.14(C)(4) provides that the court may require the offender to serve the prison terms consecutively if the court makes findings that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and one of the factors enumerated in R.C. 2929.14(C)(4)(a)-(c) is present, including the offender's history of criminal conduct.

{¶53} Where a defendant is convicted of, or pleads guilty to, a repeat violent offender specification, under R.C. 2929.14(B)(2)(a), the trial court may impose an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years for the repeat violent offender specification, if all of the following criteria are met:

> (i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.
>
> (ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.
>
> (iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.
>
> (iv) The court finds that the prison terms imposed * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed * * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

{¶54} The statute mandates that when imposing a sentence under this section, the sentencing court must state its findings, explaining the imposed sentence. R.C. 2929.14(B)(2)(e). The statute further mandates that the offender shall serve the additional prison sentence imposed under this section consecutively to and prior to the prison term imposed for the underlying offense. R.C. 2929.14(B)(2)(d).

{¶55} With respect to the imposition of consecutive sentences for mandatory prison terms associated with firearms specifications, R.C. 2929.14(C)(1) provides as follows:

Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from

a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

R.C. 2929.14(C)(1)(a); *State v. Parker*, 8th Dist. Cuyahoga No. 98272, 2013-Ohio-2898, ¶ 11. As such, the mandatory three-year firearm specification must be served consecutively to and prior to any prison term imposed for the underlying felony. *Id.*

{¶56} Here, Kappenhagen was convicted of kidnapping (where the victim was released in a safe place unharmed), a second-degree felony that is an offense of violence, and its accompanying repeat violent offender specification. At sentencing, the trial court sentenced Kappenhagen to the maximum term of imprisonment on the kidnapping charge. *See* R.C. 2929.14(A)(2)(stating the maximum sentence for a single, second-degree felony is eight years incarceration). Thus, the criteria outlined in R.C. 2929.14(B)(2)(a)(i), (ii), and (iii) have been met.

{¶57} Additionally, the trial court made the findings necessitated by R.C. 2929.14(B)(2)(a)(iv) and (v). In doing so, the court stated as follows:

[T]his all indicates to the court that a severe sentence is necessary, that a single sentence would not adequately protect our community, nor punish

this defendant, and that the following sentence I'm going to impose is not disproportionate and I'm going to find that the harm is so great or unusual that a single term would not adequately reflect the seriousness of his conduct and that his criminal history shows that consecutive terms are needed to protect the public.

And for all the previously stated reasons, I am going to impose consecutive [sentences] based on the repeat violent offender specifications that the court found that he is a repeat violent offender and that the only way to protect our community is to separate him from the community.

**{¶58}** Prior to making its findings, the court stated that it considered the defendant's statement to the court, the presentence investigation report, the statutory requirements, the principles and purposes of felony sentencing, and the appropriate recidivism and seriousness factors. The court also considered the sanity evaluation prepared in January 2013. Based upon his review of the report, the court observed that Kappenhagen "has issues with authority," he's a violent person, using his intelligence and violence to victimize others, and he "does things his own way," despite the reality of the situation. The court noted that the evaluation failed to diagnose Kappenhagen with any "real mental health" issues and that Kappenhagen "basically lied in prison about depression and suicidal thoughts" in order to get drugs in prison. The court concluded that Kappenhagen had, once again, manipulated the system, and his behavior exemplifies "a pernicious cycle of this defendant's total disregard for society rules."

**{¶59}** The trial court then considered Kappenhagen's extensive criminal history, which included the following: assault and stealing as a juvenile in 1999; unauthorized

use of a motor vehicle in 2001; aggravated robbery with a firearm specification in 2003; assault of an institutional guard, harassment, and obstructing official business; attempted receiving stolen property of a motor vehicle and failure to comply with the order of a police officer in 2007; receiving stolen property in 2009, immediately upon being released from prison; drug possession; obstructing official business and contempt of court in 2011; receiving stolen property in 2011; and misuse of credit cards and receiving stolen property in 2012. The court noted that Kappenhagen previously violated his community control three times and all of the past efforts to rehabilitate Kappenhagen and control his anger have failed.

{¶60} In light of the above, we find the trial court properly imposed a consecutive sentence. The court satisfied all of the repeat violent offender criteria mandated by statute and stated its findings accordingly. As a result, the statute mandated that the additional prison sentence imposed under R.C. 2929.14(B)(2)(a) be imposed consecutively to and prior to the prison term imposed for the underlying offense. In addition, the court was statutorily mandated to impose the sentence for the firearm specification consecutively to and prior to any prison term imposed for the underlying felony. *See* R.C. 2929.14(C)(1)(a).

{¶61} Kappenhagen's third assignment of error is overruled.

{¶62} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

PATRICIA ANN BLACKMON, P.J., and
MELODY J. STEWART, J., CONCUR