[Cite as *State v. Harrell*, 2022-Ohio-3740.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111293 |
| v. | : | |
| DEVAL H. HARRELL, SR., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 20, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656650-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Morgan Austin, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, *for appellant*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant Deval Harrell, Sr., challenges his convictions for felonious assault, kidnapping, and failure to comply, which were rendered after a jury trial. He also contends that the trial court erred in relying on an old

presentence-investigation report for the purpose of sentencing, rather than ordering a new one. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} In February 2021, appellant was indicted on the following counts: Count 1, felonious assault; Count 2, kidnapping; Count 3, failure to comply; Count 4, resisting arrest; Count 5, tampering with evidence; Count 6, possessing criminal tools; and Count 7, drug trafficking. The case proceeded to a jury trial at which the following facts were adduced.

{¶ 3} On January 29, 2021, various government agents from the Ohio Investigative Unit, the Cleveland police, and the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives had been conducting a drug interdiction operation in a particular area surrounding St. Clair Avenue in Cleveland. One of the agents involved in the operation, Robert Boldin, testified that earlier that night he noticed an individual, later identified as Teal Johnson, driving along St. Clair Avenue, pulling onto various gas station lots but not stopping to get gas or anything from the accompanying stores.[1] Agent Boldin testified that he and other agents

---

[1] Agent Boldin was an assistant agent in charge of the Cleveland District Office of the Ohio Investigation Unit. The Ohio Investigation Unit is a state law enforcement agency that conducts state-level investigations focused primarily on vice crimes involving narcotics, gambling, prostitution, and liquor. Agent Boldin completed basic peace officer training in 1993, and at the time of trial, had 28 years of law enforcement experience, which included experience in local police departments and as a narcotics detector canine handler. He has served on a multiple-county drug task force and has had advanced training in narcotics investigations.

followed Johnson discreetly from station to station and eventually to a Shell station on the corner of East 115th Street and St. Clair Avenue where she met appellant.

{¶ 4} Johnson testified that she pulled up to a pump, and appellant pulled up to the pump on the opposite of her and asked her if she "liked to party," which she took to mean that he was offering to sell her drugs. Johnson testified that she was a recently relapsed drug addict and, based on her belief that appellant was offering to sell her drugs, she got in his vehicle.

{¶ 5} Agent Boldin saw Johnson get into the rear of appellant's vehicle and saw appellant turn all the way around in the driver's seat and reach with his left hand towards the back seat where Johnson was. Based on his previous observations of Johnson, as well as what he observed inside appellant's vehicle, Agent Boldin determined that there was reasonable suspicion of a possible drug transaction and announced his intention to approach appellant's vehicle; the agent radioed for back-up assistance.

{¶ 6} Back-up law enforcement assistance arrived and maneuvered their vehicles in a position so as to prevent the potential flight of appellant. Agent Boldin parked his vehicle in front of appellant's vehicle, and another agent parked to the rear of appellant's vehicle. Agent Boldin testified that, although the law enforcement officials were in undercover vehicles, the vehicles were equipped with either sirens or police lights or both, which were activated as the officials responded to the scene. After the officials responded to the scene, appellant reversed his vehicle and hit the agent's vehicle parked behind him.

{¶ 7} Agent Daniel Mone testified as to what transpired next.[2] Upon seeing appellant strike Agent Phillips's vehicle, Agent Mone approached the driver's window of appellant's vehicle with his service weapon drawn and ordered appellant to put his vehicle in park and turn it off. Agent Mone also banged on the window of appellant's vehicle and told him to not put the vehicle in drive and to keep his hands off the steering wheel. Agent Mone and appellant made eye contact. At that time, the agent had one foot on the running board of appellant's vehicle and the other foot on the ground. According to Agent Mone, appellant sat in his vehicle for a moment as if he were contemplating whether he was going to comply with the agent's commands. Ultimately, appellant did not follow any of Agent Mone's commands and, instead, put his vehicle in drive, turned the wheel, and accelerated.

{¶ 8} Agent Mone testified that appellant turned his steering wheel so hard that Agent Mone was thrown off appellant's vehicle and pushed into another vehicle on the scene. The agent explained that he was pinched in between the other vehicle and appellant's vehicle and thought he was going to get crushed between the two vehicles. Agent Mone's right buttock was on the other vehicle while the front of his right thigh was on appellant's vehicle. The agent testified that the impact hurt, but admitted that it was "not extremely painful" and that he suffered only minor bumps and bruises from being pushed up and pinned between the two cars. Appellant sped

---

[2] Agent Mone was an enforcement agent with the Cleveland District of the Ohio Investigation Unit. He completed basic police officer training, as well as three weeks orientation and six months field training with the Investigation Unit. He had been employed with the Unit for eight years, and at the time of the incident was a member of the FBI gang task force.

away from the gas station. His vehicle "jumped" the gas station's curb, and struck a utility pole wire. Appellant then sped down the street. Video surveillance from the gas station captured much of the above-described events and was played for the jury. *See* state's exhibit Nos. 2 and 3.

{¶ 9} Johnson was still in the vehicle. She testified that, in the moments leading up to appellant speeding away, she saw "a lot of cars come screeching in at one time and [she] didn't know what it was." However, she "just happened to look up and * * * saw a little—the red and blue * * * small light * * * flashing, and [she] realized they were all police." Johnson testified that upon realizing the cars were the police, she said out loud "[w]ell, these are the police in front of us." Appellant then sped away. Johnson admitted that she voluntarily got into appellant's vehicle, but testified that she did not want to be in the car when the police arrived and that she was unable to get out of the vehicle once appellant sped away because "we were just, like, going too fast * * * I wouldn't be able to just jump out of the car. I wouldn't get out while we're speeding away. I mean, without probably killing myself."

{¶ 10} Shortly after speeding away from the gas station, appellant lost control of his vehicle, drove into a vacant lot, and crashed into a fence. Appellant fled the scene and was apprehended after a 20-30 minute search. Johnson was unable to get out the vehicle and the police had to remove her through a window.

{¶ 11} Appellant testified. He admitted that he has prior convictions for receiving stolen property, conveyance of illegal substances in a detention center, and

drug trafficking. His last conviction was around 2011, and he testified that he has not been involved with drugs since then.

{¶ 12} In regard to this case, appellant testified that he was driving on St. Clair Avenue, on his way to his brother's house, when he noticed a "nice-looking" lady (Johnson) at the Shell gas station and decided to stop to talk to her. Appellant pulled up to the opposite side of the pump where Johnson was and asked her if she liked to party; Johnson responded "yes."

{¶ 13} According to appellant, Johnson got out of her vehicle and went into the gas station store, he presumed to pay for her gas. He testified that while she was in the store he was finding music to play and did not look out of his window at all. Johnson came back to his vehicle, and he told her to get in the back because the front passenger seat was wet. Upon Johnson getting in the back, appellant immediately turned around to talk to her. The next thing appellant saw were "bright lights." Appellant denied that he saw red or blue flashing lights or the police. Rather, he thought he was being robbed and he fled because of his "street instincts."

{¶ 14} Appellant testified that he did not see any of the law enforcement officials on the scene and did not hear any of their commands because he was turned around and the music was turned up loud. He said he asked Johnson if she knew what was going on. He could not hear her answer, but read her lips that she did not. He testified that if he had known the police were there he would have stopped because he was not doing anything wrong.

{¶ 15} On cross-examination, the assistant prosecuting attorney played the surveillance video from the gas station for appellant. Appellant admitted seeing the police on the video. He described one officer as "pretty much kissing the window" of his (appellant's) vehicle and another officer as "pretty much like on the window." Appellant reiterated that at the time of the within incident he was not trafficking in drugs, having stopped that activity years prior.

{¶ 16} On this evidence, the jury returned verdicts of guilty on Count 1, felonious assault, Count 2, kidnapping, and Count 3, failure to comply. The jury returned a verdict of not guilty on Count 4, resisting arrest.[3] The trial court sentenced appellant to an eight-year prison term. This appeal ensues, with appellant raising the following three assignments of error for our review:

I. The convictions on Counts 1 and 2 were obtained on insufficient evidence.[4]

II. The trial court erred when it permitted the government to impeach Mr. Harrell's credibility under Evid.R. 609 without first balancing the probative value against the risk of prejudice.

III. The trial court erred when it failed to order a new pretrial investigation report and, rather than proceeding without one, used an old one. This error denied Mr. Harrell his right to due process of law.

**Law and Analysis**

{¶ 17} In his first assignment of error, appellant contends that his felonious assault and kidnapping convictions are not supported by sufficient evidence.

---

[3] The state dismissed Counts 5, 6, and 7, tampering with evidence, possessing criminal tools, and drug trafficking, respectively.

[4] Appellant does not challenge his failure to comply conviction (Count 3) on the ground of sufficiency of the evidence; his challenge to that count is encompassed under his second assignment of error under which he seeks a new trial.

{¶ 18} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Dyer*, 8th Dist. Cuyahoga No. 88202, 2007-Ohio-1704, ¶ 24, citing *Thompkins* at 390.

**Felonious Assault**

{¶ 19} Appellant was charged with felonious assault under R.C. 2903.11(A)(2), which provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." According to appellant, the evidence was insufficient to show that he knowingly used his vehicle as a deadly weapon and that he knowingly caused or attempted to cause harm to Agent Mone.

{¶ 20} "Knowingly," for purposes of R.C. 2903.11, is defined in R.C. 2901.22(B) as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is

an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 21} A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2901.22(A). It is well-established that a vehicle, "when used in a manner likely to produce death or great bodily harm, can be classified as a 'deadly weapon' under R.C. 2923.11." *State v. Sternbach*, 8th Dist. Cuyahoga No. 100653, 2014-Ohio-4203, ¶ 24, citing *State v. Tate*, 8th Dist. Cuyahoga No. 87008, 2006-Ohio-3722, ¶ 23, citing *State v. Troyer*, 8th Dist. Cuyahoga No. 61983, 1993 Ohio App. LEXIS 1791 (Apr. 1, 1993); *see also State v. Dupuis*, 6th Dist. Lucas No. L-12-1035, 2013-Ohio-2128, ¶ 61, citing *State v. Griffith*, 8th Dist. Cuyahoga No. 97366, 2013-Ohio-256, ¶ 13 ("In Ohio, a vehicle, such as a car or minivan, is recognized as a 'deadly weapon' as set forth in R.C. 2901.22.").

{¶ 22} Appellant contends that the "evidence in this case was insufficient to show that [he] 'used' his automobile knowingly as a 'deadly weapon' under the circumstances." He cites a number of cases in which he contends that, unlike this case, there was "clear evidence of [a] specific intent to use the car as a deadly weapon." Appellant compares those cases to this case, where he contends he "lightly bumped an unoccupied police vehicle, causing only," as Agent Boldin described it, "nondisabling, nonmechanical cosmetic damage." Appellant further contends that

in regard to Agent Mone, the agent testified that appellant "nearly" hit him, causing him "to bump into a car behind him, but not causing [him] any physical harm." Thus, according to appellant the record only demonstrates that he was attempting to flee; it does not demonstrate felonious assault. We disagree.

{¶ 23} In regard to appellant's claim of lack of injury to anyone, the record belies his contention. Agent Mone testified that he was "pinched" between appellant's vehicle and another vehicle. The agent's leg was pinned between the two vehicles while his right buttock was against one vehicle and the front of his right thigh was pressed against the other vehicle when he was thrown off the running board of appellant's vehicle. Although Agent Mone was not seriously injured, he did testify that the impact hurt and that he suffered minor bumps and bruises as a result. "Physical harm" means any injury regardless of its gravity or duration. R.C. 2901.01(A)(3). The evidence in this case is sufficient to support a finding of physical harm.

{¶ 24} Moreover, the statute prohibits causing or attempting to cause physical harm. The evidence was sufficient to demonstrate that appellant attempted to cause physical harm. (*See State v. Brown*, 8th Dist. Cuyahoga No. 90398, 2008-Ohio-23668, ¶ 14 (sufficient evidence supported felonious assault conviction under R.C. 2903.11(A)(2) where police pulled in driveway behind defendant's vehicle, defendant put his car in reverse, and police had to put their cruiser in reverse to avoid being hit).)

{¶ 25} We are also not persuaded by appellant's contention that, at most, the evidence only supported a fleeing charge. This court has held that "'[f]elonious assault has been established where the accused strikes a police car during a high speed chase, yet claims he was merely attempting to flee * * * and has also been established where the accused accelerates toward a police officer, but claims to have done so without the requisite mental state.'" *State v. Prince*, 8th Dist. Cuyahoga No. 61342, 1992 Ohio App. LEXIS 5844, *4-*5 (Nov. 19, 1992), quoting *State v. Bernard*, 8th Dist. Cuyahoga No. 59452, 1991 Ohio App. LEXIS 5875, *6 (Dec. 5, 1991), citing *State v. Townsend*, 8th Dist. Cuyahoga No. 56571, 1990 Ohio App. LEXIS 600 (Feb. 22, 1990), and *State v. Buford*, 8th Dist. Cuyahoga No. 57213, 1990 Ohio App. LEXIS 2838 (July 12, 1990).

{¶ 26} Thus, the state presented sufficient evidence, if believed, to support the felonious assault conviction.

**Kidnapping**

{¶ 27} Appellant was convicted of kidnapping under R.C. 2905.01(B)(1), which provides that "[n]o person, by force, threat, or deception * * * shall knowingly * * *, under circumstances that create a substantial risk of serious physical harm to the victim, * * * [r]emove another from the place where the other person is found[.]" Relying on Johnson's testimony that she voluntarily got into appellant's vehicle, appellant contends that the evidence was insufficient to demonstrate that he used force, threat, or deception to remove Johnson from the place where she was found. We disagree.

{¶ 28} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." This court has previously explained that

> Ohio law is clear that "[a]n offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. * * * Rather, it depends on whether the restraint 'is such as to place the victim in the offender's power and beyond immediate help, even though temporarily.' * * * The restraint 'need not be actual confinement, but may be merely compelling the victim to stay where he [or she] is.'" *State v. Mosley*, 178 Ohio App.3d 631, 2008-Ohio-5483, 899 N.E.2d 1021[(8th Dist.)], citing *State v. Wilson*, 10th Dist. Franklin No. 99AP-1259, 2000 Ohio App. LEXIS 5057 (Nov. 2, 2000).

*State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229, ¶ 24.

{¶ 29} In *State v. Ryan*, 8th Dist. Cuyahoga No. 108143, 2019-Ohio-5339, this court upheld a kidnapping conviction in an instance where the victim voluntarily got into the defendant's vehicle. In *Ryan*, the victim voluntarily got into the defendant's, her then- boyfriend's, vehicle. The defendant was upset with the victim and began assaulting her. The victim testified as to being under the defendant's power and beyond immediate help. She explained that he was driving in an "'insane' manner." *Id.* at ¶ 5. He "was trying to beat me up with the car, not just his hands. * * * [he was] slamming on the brakes, trying to get around other cars, trying to go fast." *Id.* The victim testified that she repeatedly tried to get out of the car, but the defendant would speed up, making it "impossible." *Id.*

{¶ 30} The defendant in *Ryan* was convicted of felonious assault and kidnapping. On appeal, he admitted that he assaulted the victim, but challenged his kidnapping conviction. This court upheld the conviction, finding "[a]lthough [the

victim] initially voluntarily got into the car with [the defendant], she testified that she attempted to get out after he started assaulting her, but he would speed up, making it impossible for her to do so. The record shows that Ryan restrained her of her liberty for the purpose of terrorizing her and inflicting serious physical harm on her." *Id.* at ¶ 27.[5]

{¶ 31} Further, appellee cites *State v. Haynes*, 6th Dist. Wood No. WD-19-035, 2020-Ohio-6977, for the proposition that the physical act of driving a person away from the place where they were found can constitute force. We agree with the Sixth District's reasoning.

{¶ 32} In *Haynes*, the defendant picked up two of his grandsons from a friend's house and directed his wife to pick up his third grandson from school. All three children voluntarily entered the vehicles and were driven away from the place where they were found. Haynes did not have legal custody of the children and was aware that the children's father was on his way to get the children from the respective places where they were. The defendant was convicted of abduction. On appeal, he contended that state failed to present sufficient evidence of force to support the abduction convictions.

{¶ 33} The appellate court disagreed with the defendant. It noted that R.C. 2901.01(A)(1) defines force as "*any* violence, compulsion, or constraint physically

---

[5] The defendant in *Ryan* was convicted of kidnapping under R.C. 2905.01(A)(3) ("No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim or another[.]").

exerted by any means upon or against a person or *thing*" and analogized the force used to move the children in the cars to that of burglary cases where trespass-by-force is an element that is often met by showing a compulsion against a thing (i.e., a door) rather than a person. (Emphasis added.)

{¶ 34} In this case, Johnson, like the victims in *Haynes*, voluntarily got into appellant's vehicle. However, she testified that she did not want to be in the car when the police arrived. Appellant insinuates that her testimony merely meant that she did not want to be in trouble because her intention in getting into appellant's vehicle was to obtain drugs. Johnson elaborated, however, that she was unable to get out of the vehicle once appellant sped away because "we were just, like, going too fast * * * I wouldn't be able to just jump out of the car. I wouldn't get out while we're speeding away. I mean, without probably killing myself." Further, both Johnson and appellant testified that Johnson's vehicle was at a pump when she got in appellant's vehicle. That testimony created a reasonable inference that Johnson only intended to get in appellant's vehicle to obtain drugs, not to be moved from the place where she was found. The testimony demonstrated that Johnson was under appellant's power and beyond immediate help; she was compelled to stay in the vehicle. The state presented sufficient evidence, if believed, to support the kidnapping conviction.

{¶ 35} The first assignment of error is overruled.

{¶ 36} In his second assignment of error, appellant contends that the trial court erred by allowing the state to impeach him without first balancing the probative value of the testimony against the risk of prejudice.

{¶ 37} Evid.R. 609(A)(2) permits the admission of prior convictions — with some limitations not at issue here — provided that the probative value outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury, and the evidence is not excluded by the court in its discretion under Evid.R. 403(B). *State v. Brown*, 100 Ohio St. 3d 51, 2003-Ohio-5059d, 796 N.E.2d 506, ¶ 27.

{¶ 38} Further, Evid.R. 403(A), provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The exclusion of relevant evidence under Evid.R. 403(A) rests within the discretion of the trial court. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.

{¶ 39} On direct examination, appellant testified that he had been convicted of receiving stolen property, conveyance of illegal substance in a detention center, and drug trafficking. He also testified that he knew "right from wrong." On redirect examination, appellant testified that he cooperates with law enforcement and admitted to his involvement in criminal activity. Regarding this case, appellant testified that had he known the police were attempting to stop him he would have

pulled over because he was "not doing anything wrong."  The following questions and answers ensued:

> Q.  Okay.  And in the past when you have done things wrong * * * you've been charged with crimes, right?
>
> A.  Yeah.
>
> Q.  Have you ever admitted to that?
>
> A.  Yes.  I pulled over.
>
> Q.  Okay.  Well, you've been charged with crimes in the past—
>
> A.  Yes.
>
> Q.  –that we talked about, right?
>
> A.  Yes.
>
> Q.  And did you admit your involvement in those crimes?
>
> A.  Yes.
>
> Q.  And why did you admit your involvement in those crimes?
>
> A.  Because I knew I did wrong.
>
> Q.  And conversely, do you believe you did anything wrong here?
>
> A.  No.

Tr. 636.

{¶ 40} On recross-examination, the assistant prosecuting attorney sought to question appellant about specific instances when appellant's contentions about cooperativeness and doing the right thing were not authenticated by his actions. Defense counsel objected and the trial court and counsel for the parties engaged in

a lengthy discussion about the state's desired line of questioning.  At the conclusion

of the discussion, the trial court ruled as follows:

> All right.  The Court's going to overrule the defense's objection and allow any inquiry, not to the specifics, but in the past when [appellant has] been stopped by the police * * * [has he] run and not complied and * * * had to be caught.  And had to be chased and caught.  * * *  And then we'll see what his answer is.  * * *  [I]f he answers yes, that's the end of it.  Okay?
>
> * * *
>
> If he answers no and [the state] wants to follow up on cross, you do so only after permission of the Court.  We'll decide if you meet the answer or if you're allowed to continue.

Tr. 658.

{¶ 41} The trial court also allowed the state to question appellant as to

whether he had ever been dishonest with law enforcement about a crime, and

admonished the state that "[i]f the answer is yes * * * that's the end of it.  Then you

move on.  We're not going to retry those cases." *Id.* at 659.

{¶ 42} The following questioning ensued:

Q.  Mr. Harrell, you testified that in the past if you knew police were stopping you, you would comply, isn't that true?

A.  Yes.

Q.  Isn't it true in the past that you haven't always complied with police when they've attempted to stop you?

A.  Not to my understanding.

*Id.* at 661.

{¶ 43} The state then sought, and the trial court granted, permission for further questioning about a prior incident in which appellant fled from the police. Appellant testified as to the circumstances regarding that incident, and as the state attempted to further question him, the trial court ended the line of inquiry stating, "Counsel, that's enough. Let's go on to another subject. Let's stick with this trial."

{¶ 44} In regard to appellant's truthfulness with the police, appellant's testimony appears to be that on a prior occasion when he was being arrested, he was searched before being placed in a police cruiser. As he was being booked into jail "the detention office checked [his] fifth pocket and that's when he seen [he] had some marijuana in [his] fifth pocket." Appellant admitted that the police at the jail asked him if he had contraband on his person and he figured that they had already retrieved the marijuana, so seemingly he told them no. The trial court ended the state's attempt at further questioning, stating that it did not "want to try that case."

{¶ 45} On this record, appellant opened the door to the state's line of questioning and it was permissible under the rules of evidence. Further, the trial court properly limited the questioning so that appellant would not be unfairly prejudiced.

{¶ 46} The second assignment of error is overruled.

{¶ 47} In his third assignment of error, appellant contends that the trial court erred by failing to order a new presentence-investigation report. We disagree.

{¶ 48} After the jury's verdict, and prior to sentencing, the defense requested a presentence-investigation report, so that counsel would "be able to have whatever tools [counsel] needed" at sentencing. The court responded,

> I agree, you should have the tools, but the presentence report, all it's going to do is rehash [appellant's] prior history which we have from all these other presentence reports. We have his 50 thereabouts arrest records, cycles. We have the social history.

Tr. 816-817.

{¶ 49} The trial court denied the defense's request and gave the defense several days to prepare for sentencing. The trial court told the defense that if it needed to delve into anything further on behalf of appellant it should "file a motion and I'll entertain it. You'll have to articulate why." No such motion was filed and the trial court relied on several past presentence-investigation reports completed on appellant, the most recent of which was six years old.

{¶ 50} Under R.C. 2947.06(A)(1), "[t]he court shall determine whether sentence should immediately be imposed. The court on its own motion may direct the department of probation of the county in which the defendant resides, or its own regular probation officer, to make any inquiries and presentence investigation reports that the court requires concerning the defendant."

{¶ 51} Under Crim.R. 32.2, "[i]n felony cases the court shall, and in misdemeanor cases the court may, order a presentence investigation and report before imposing community control sanctions or granting probation."

{¶ 52} In *State v. Exline*, 8th Dist. Cuyahoga No. 87945, 2007-Ohio-272, this court stated, "Crim.R. 32.2, governing presentence investigations, mandates that such reports are required only in instances when the court imposes community control sanctions or probation. Thus, because appellant was sentenced to a prison term, there was no requirement that the court order a presentence investigation report." *Id.* at ¶ 26.

{¶ 53} Here, as in *Exline*, the court did not impose community-control sanctions; therefore, it was not required to order a presentence investigation. Further, it is clear that the trial court did not impose a sentence without any prior background information. The presentence-investigation reports, by the defense's own admission, included information of appellant's prior criminal record, social history, family history, mental-health history, and drug history. Appellant's counsel stated that she was able to review the reports. Counsel also provided mitigation as to what appellant had done in the six years since the last report was completed. On this record, the trial court did not abuse its discretion in denying appellant's request for a new presentence report.

{¶ 54} The third assignment of error is overruled.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

SEAN C. GALLAGHER, A.J., CONCURS (WITH SEPARATE CONCURRING OPINION);
EMANUELLA D. GROVES, J., CONCURS WITH MAJORITY AND WITH THE SEPARATE CONCURRING OPINION

SEAN C. GALLAGHER, A.J., CONCURRING:

{¶ 56} I concur fully with the decision of the majority, but write separately to clarify Harrell's impeachment discussion, which has potential to create confusion based on the interplay between several evidentiary rules and the potential for this court to adopt analysis blurring the distinction between those separate evidentiary rules.

{¶ 57} Harrell primarily claims the trial court failed to consider the foundational requirements under Evid.R. 609(A) before admitting Harrell's prior convictions into the record. Harrell stole the state's thunder at trial, however, and disclosed the fact of his prior convictions in accordance with Evid.R. 609(A) in his direct examination. The trial court was not obligated to consider the foundation for admitting the prior convictions under Evid.R. 609(A) because any foundational error would have been invited by Harrell. His appellate reliance on the balancing

test under Evid.R. 609(A)(2) or (3) as a basis to seek reversal of the convictions is, therefore, misplaced. Any error in that respect was caused by Harrell, not the state or the trial court.

{¶ 58} Although the following is not dispositive, there are important distinctions between the relevant evidentiary rules that should be considered by the parties in building records and presenting appellate arguments. Evid.R. 609 is not relevant to how the disputed testimony was admitted at trial. On redirect-examination, Harrell testified that if he had known that police officers were initiating the stop at the gas station on the night of his arrest, he would have submitted to their authority as he has demonstrated through his past encounters with police officers — conveying to the jury that Harrell respected or was willing to submit to the authority of law enforcement officers.

{¶ 59} In response, the state sought to question Harrell about two discrete instances of Harrell's past conduct: his lying to arresting officers in an effort to conceal drugs hidden on his body during prior arrest and Harrell's conduct in fleeing officers attempting to detain him for possessing stolen property — both of which are evidence of Harrell's character for truthfulness based on his trial testimony and were beyond the simple fact of the prior convictions themselves. So, although the state's impeachment inquiry touched upon the fact of the prior convictions, only questions related to the facts underlying those convictions, and not the extrinsic evidence of those facts, were admitted at trial.

{¶ 60} Even though neither the parties nor the trial court expressly stated it, the state's line of impeachment testimony in this case is governed by Evid.R. 608(B):

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *.

{¶ 61} The trial court, while not expressly referencing Evid.R. 608(B), nevertheless determined that the state's questioning was probative of Harrell's truthfulness on the witness stand but precluded the state from presenting extrinsic evidence to support the impeachment inquiry. Accordingly, the trial court permitted the state to question Harrell on cross-examination about those two specific instances of Harrell's conduct that contradicted his self-serving, direct testimony. *See, e.g., State v. Patton*, 6th Dist. Lucas No. L-12-1356, 2015-Ohio-1866, ¶ 106 (questioning witness about wearing gang memorabilia at school was permitted on cross-examination to impeach the witness's claim that she lacked any knowledge of gangs). The admission of the disputed evidence in this appeal fell under Evid.R. 608(B), a rule that was not discussed by Harrell in this appeal.

{¶ 62} In addition to the misplaced focus on Evid.R. 609(A), Harrell also asks for a declaration that the admission of the state's impeachment line of inquiry during the cross-examination was in error because that permitted the jury to conclude that Harrell's "conduct in this case was in conformity with his alleged conduct in the prior cases." There are inherent problems with this type of argument.

{¶ 63} There are exceptions to Evid.R. 404(A), which sets forth the preclusion against using character evidence to demonstrate actions in conformity with prior conduct, exceptions not acknowledged by Harrell. Importantly, there is no dispute that the state did not seek to introduce "other acts" evidence under Evid.R. 404(B) to prove something other than character. Accordingly, this discussion is solely guided by Evid.R. 404(A) and the rules on impeaching a testifying witness.

{¶ 64} Under Evid.R. 404(A), "evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion" *except* for evidence of a pertinent character trait or the character of the accused offered by the prosecution as rebuttal to the accused's introduction of evidence under subdivision (A)(1) of the rule or the prior felony convictions of a witness introduced through Evid.R. 609(A) under subdivision (A)(3) of the rule. *See, e.g., State v. Morgan*, 1st Dist. Hamilton No. C-160495, 2017-Ohio-7489, ¶ 15 ("[T]hrough [the defendant's] testimony that she wanted to find a nonviolent resolution to the conflict and that she was a weak person who projected a tough persona, she conveyed to the jury that she was, in fact, a peaceful person who preferred to resolve conflicts in a peaceful manner," and accordingly, the state was permitted to rebut that implication through evidence that the defendant previously resolved conflicts with violence under Evid.R. 404(A)(1).). Thus, for the purposes of this appeal, any evidence introduced under Evid.R. 404(A)(1) is an

express exception to the general rule precluding the admission of the evidence for the purpose of proving action in conformity with prior conduct.

{¶ 65} Harrell's entire claim, relying on the conformity language from Evid.R. 404(A) under his analysis challenging the state's impeachment during cross-examination, is misplaced. Evid.R. 404(A)(1) provides an express exception to the preclusion against proving action in conformity with prior conduct. *Smith v. Asbell*, 4th Dist. Scioto No. 03CA2897, 2005-Ohio-2310, ¶ 31 (Evid.R. 404(A)(3) "specifically states that evidence admissible under Evid.R. 609 is an exception to its prohibition."); *State v. Martin*, 12th Dist. Warren Nos. CA2002-10-111, CA2002-10-115, and CA2002-10-116, 2003-Ohio-6551, ¶ 20 ("Use of character evidence for impeachment under Evid.R. 609 'is a true exception to the policy against admitting evidence of a character trait solely to show action in conformity with that trait.'"), quoting *State v. Mayes*, 12th Dist. Madison No. CA99-01-002, 1999 Ohio App. LEXIS 6405 (Dec. 30, 1999), and McCormick, *Evidence,* Section 194, 685 (5th Ed.1999). Even if I were inclined to consider Harrell's arguments on the merits, which solely focus on Evid.R. 609, his argument fails to account for the exceptions to Evid.R. 404(A) and it would be rejected of its own accord.

{¶ 66} With these clarifications in mind, I otherwise fully concur with the majority's decision.